[PHILADELPHIA, APRIL 16TH, 1839.]

## MASDEN'S ESTATE.

APPEAL.

A testator devised and bequeathed to his wife, the use of his house and lot, of his furniture, &c.; and devised and bequeathed all and the rest and residue of his estate, to his executors, in trust to invest and keep invested the personal estate, and on the death of his wife, to sell the real estate, &c. He directed that the executors should pay to his wife, while she continued his widow, the sum of $500 per annum for each child, until twenty-one, and that the residue of the income should be invested as an accumulating fund, to be paid in just proportions, with the balance of the portion of such of his children respectively, to whom the said fund ought to belong, at their arrival at the age of twenty-five years respectively. He also directed his executors to pay to each son, on arriving at the age of twenty-one, the sum of $5000, in part of his portion, and the balance of their respective portions at twenty-five; and to each daughter on her marriage $2000, in part of her portion, on her arrival at twenty one, such further sum as would amount to the one-half of her portion, and the balance on her arriving at twenty-five, and if she should be then married, to apply the same to her separate use. *Provided*, that if any or either of his children, should die without having received his or her portion, before arriving at twenty-five, leaving any child, the share or such part as should not have been received by such decedent in his life-time, to be paid, or the securities assigned to his child or children, that should then be living, and the issue of such as should be dead, &c., but in default of such child or issue, then the executors were to pay or assign the same, or the securities thereof, to the survivors or survivor of his children who should then be living, and the issue of such of them, as should then be dead, &c. By a codicil of the same date, he declared that in case all his children should die before twenty-five, without issue, then and immediately after the death of his wife, he gave to E. W. $30,000, in trust for the use of the poor, &c.; and all the rest and residue of his estate, not previously disposed of, agreeably to the provisions of his said will, he gave to T. H. &c. The testator left a widow and three children, A. M. and B., and stock, &c., to the value of about $90,000. B. died under twenty-one, and A. shortly afterwards, also under twenty-one, and both without issue. *Held*, that the share of B. vested absolutely in A. and on her death did not survive to M. but went to her personal representatives.

THIS was an appeal from a decree of the Orphans' Court for the County of Philadelphia, made in the matter of the accounts of William Kirkham and Charles Roberts, executors of the last will and testament of Benjamin Masden, deceased.

The question determined by the Court, in this case, arose upon the true construction of the will of the testator, and of the codicil thereto, both of which it is necessary to insert at length.

"Be it remembered, That I Benjamin Masden, of the city of

(Masden's Estate.)

Philadelphia, gentleman, being of sound mind and memory, do hereby make my last will and testament, in manner following, that is to say,—

First, I will that all my just debts and funeral expenses, shall be duly paid and satisfied, for which and other purposes hereinafter declared, I do hereby nominate and appoint my respected friends, William Kirkham and Charles Roberts (of Arch street) of the city of Philadelphia, executors of this my last will and testament.

Item. I give, devise and bequeath unto my beloved wife Hannah, the use, possession, rents and incomes, of the messuage and lot of ground I now occupy, with the appurtenances, and likewise the use and possession of all my household furniture, of every description, likewise of my plate, and all other articles and things purchased and provided by me for family use, to hold to her my said beloved wife, for and during all the term of her natural life, 'if she so long shall remain my widow, single and unmarried, she, nevertheless, during the said term, paying the taxes on the said real estate, and keeping the same in good tenantable order and repair.

Item. I do hereby nominate and appoint my said beloved wife Hannah, guardian of the persons of all my minor children, now born and hereafter to be born, so long as she shall remain my widow, single and unmarried; and from and immediately after her decease or intermarriage, whichever may first and next happen, I nominate and appoint my said friends William Kirkham and Charles Roberts, and the survivor of them, guardians of all my minor children. And it is my mind and will, and I hereby direct that my son Benjamin, and every other of my son or sons, that may be hereafter born, shall be placed out apprentices as soon as they respectively shall arrive at a suitable age, to learn some profession or business that they respectively may make choice of.

And all the rest and residue of my estate, whatsoever and wheresoever, I give, devise and bequeath unto the said William Kirkham and Charles Roberts, and the survivor of them, and the executors, administrators and assigns of such survivor, in trust, nevertheless, to and for the uses, intents and purposes following—that is to say, to place out and continue the personal estate at interest, on good mortgage security, or to invest the same in the purchase of any of the public loans, stocks or securities, bearing an interest, as they or he, in their sole discretion may see fit; and the same to call in, new place, change, sell or dispose of the same, or any part thereof, when and so often as they may see fit; and to reinvest the same in any manner they may deem advisable, and conceive most beneficial; with liberty for them to leave unchanged any of my personal estate, that may be invested in any stocks or securities at the time of my decease, so long as they may judge proper; and from time to time, to receive the interests and dividends accruing on all the said resi-

duary personal estate, when, and as the same shall become due and payable. And on the decease or intermarriage of my said wife, whichever may first and next happen, to let and demise the aforesaid messuage and lot of ground, hereinbefore devised to my said wife, for the term of her natural life or widowhood as aforesaid, at and for the best rent that can be reasonably obtained for the same, payable quarterly, and to receive the said rent, when and as the same shall become due and payable, until a sale of the said messuage and lot of ground shall be made, under the authority hereinafter given for that purpose, and to receive the money arising from such sale, or the balance thereof as the case may be; and likewise to receive the money which shall arise from the personal property hereinbefore bequeathed to and for the use of my said wife, during her life or widowhoood as aforesaid, and the moneys proceeding from such sales, that they, the said trustees, or the survivor of them, or the executors, administrators or assigns of such survivor, do, and shall place out and continue the same at interest, or invest the same in the like manner as I have hereinbefore mentioned.

And 1 do hereby declare it to be my mind and will, that my children now born, namely, Ann S., Mary, and Benjamin, and those that may hereafter be born, shall be equally entitled to and benefitted by my residuary estate, subject however to this trust, and to the limitations and restrictions hereinafter mentioned and expressed, that is to say, that they, the said trustees and the survivor of them, and the executors, administrators or assigns of such survivor, do and shall, from and out of the interests, dividends and incomes of my said estate, pay to my said wife, if she shall continue my widow, single and unmarried, for the support, maintenance, clothing and education of my minor children, for each and every of them the yearly sum of five hundred dollars, to be paid to her half-yearly, that is to say, for my said son or sons respectively, until they shall arrive at the age of twenty-one years, and for my daughters respectively, until they shall arrive at full age or get married, whichever may first and next happen; and the residue, if any, of the said interest, dividends and income, I direct the said trustees, or the survivor of them, or the executors, administrators or assigns of such survivor, to place out and continue the same at interest, or to invest the same in public stocks or securities, as hereinbefore mentioned, as an accumulating fund, to be paid in just proportions with the balance of the portion of such of my children respectively to whom the said fund ought to belong, at their arrival at the age of twenty-five years respectively; and if my said wife shall depart this life or get married before all my children shall arrive at the age of twenty-one years, then, and in such case, I direct the said trustees, and the survivor of them, and the executors, administrators and assigns of the survivor of them, to appropriate and apply so much of the respective shares of the said interest, dividends and incomes, there-

(Masden's Estate.)

after accruing, belonging to my children who may then be in their minority, except their part of the accumulating fund, and the interest thereof, for the support and maintenance of my minor children respectively, that is to say, with respect to my son or sons, until they respectively shall arrive at full age, and with respect to my daughters, until they respectively arrive at full age, or get married, whichever may first and next happen, and the surplus, if any, of the said minors' shares of the said interest and income to place at interest for their benefit, to be paid to them respectively, on their arriving at the age of twenty-one years respectively.

And I do hereby direct the said trustees, or the survivor of them, or the executors, administrators or assigns of such survivor, on my son or sons respectively arriving at the age of twenty-one years, to pay to them respectively the sum of five thousand dollars, in part of their respective portions of my estate, to enable them respectively to commence business; and likewise to pay to them respectively, on their arrival at the age of twenty-five years, the balance of their respective portions of my estate, with their respective shares of the said accumulating fund; and to pay to them respectively, half yearly, the interest accruing on the said balance of their respective portions of my estate, from their arriving at the age of twenty-one years. And likewise to pay unto each of my daughters respectively, on the day of her intermarriage, the sum of two thousand dollars, in part of her portion of my estate, as an outfit; and on her arrival at the age of twenty-one years, to pay her in further part, such a sum as with the said sum of two thousand dollars paid to her as an outfit on her intermarriage, will amount to the one-half of her portion of my estate, and to pay to her half yearly the interest accruing on such further part, from the time of the intermarriage, until she arrive at the age of twenty-one years; and to pay to each of my daughters respectively, on her arrival at the age of twenty-five years, if at that time she shall not be married, the balance of her share of my estate, together with her share, if any, of the said accumulating fund; and to pay to her in half yearly payments, the interest accruing on the said balance of her share of my estate, from the time of her arriving at the age of twenty-one years; but if she shall be married at the time of her arriving at the age of twenty-five years, then I direct the said trustees, or the survivor of them, or the executors, administrators or assigns, of such survivor, to pay or assign the same, or the securities thereof, to such person or persons, as my daughter may approve of, in trust to place out and continue the same at interest, or to invest the same in some productive fund, as she, by any writing may require, and to pay over the interest and income thereof, to her, into her own hands, for her sole and separate use, and on her separate receipt, without being in any wise subject or liable to the debts, power, control or interference of the husband she may then have : and if she shall survive her said husband, then upon

*(Masden's Estate.)*

his decease, to pay or assign the same, or the securities thereof, to her, her executors, administrators and assigns, to her and their only proper use and behoof. But if her husband shall survive her, then, upon such her decease, to pay or assign the same, or the securities thereof, to her child or children, that may be then living, and the issue of such of them as may be then dead, in equal parts, such issue taking, and among themselves equally dividing, such part and share only, as their deceased parent would have taken *if living*:

Provided always, and it is my mind and will, that if any or either of my children, shall die without having received his, her or their portion of my estate, before arriving at the age of twenty-five years, leaving any child or children, or issue of any child or children, then and in such case, I direct the share and portion of such decedent or decedents, or such part thereof, as such decedent or decedents may not have received, in his, her or their lifetime, be paid, or the securities thereof assigned to his, her or their child or children that may then be living, and the issue of such of them as may be then dead, in equal parts, such issue taking, and among themselves equally dividing such part and share only, as their deceased parent would have taken if living; but in default of any such child or children or issue of any such child or children, then to pay or assign the same or the securities thereof, to the survivors or survivor of my children, who may then be living, and the issue of such of them as may be then dead in equal parts, such issue taking and among themselves equally dividing such part and share only as their deceased parent would have taken if living:

And provided also, and it is my mind and will, that if my said wife shall marry again, then I direct my executors, out of the moneys arising from the sale of my aforesaid messuage or tenement and lot of ground, to purchase an annuity of two hundred dollars, payable half yearly, for and during all the term of her natural life, in the name of some person or persons as they may approve of, to be held by such person or persons, and the survivor of them, and the executors, administrators and assigns of such survivor, in trust to pay over the same half yearly to my said wife, for and during all the remainder of the term of her natural life, or to authorise her to receive the same for her sole and separate use, and on her separate receipt, without being in anywise subject or liable to the debts, power, control or interference of her then husband, or any other husband she may thereafter have or take.

And I do hereby authorise my said executors, or the survivor of them, immediately on the decease or intermarriage of my said wife, whichever may first and next happen, to sell and dispose of my aforesaid messuage or tenement and lot of ground with the appurtenances, either by public or private sale, at and for the best price that can be reasonably obtained for the same, and upon receipt of the purchase-money or security therefor, to grant and convey the

(Masden's Estate.)

same to the purchaser or purchasers thereof, his, her or their heirs or assigns, forever in fee simple. Provided always, that whatever I have hereinbefore given to or for the benefit of my said wife, is in lieu and full satisfaction of her dower or thirds, and all other expectancies of and in my estate.

Lastly. I do hereby revoke all wills and testaments by me at any time heretofore made and published, and declare this only to be and contain my last will and testament. In witness whereof, I have hereunto set my hand and seal, the twentieth day of October, in the year of our Lord one thousand eight hundred and thirty-four."

## Codicil.

" I, Benjamin Masden, of the city of Philadelphia, do hereby make the following codicil and addition to my last will and testament, bearing even date herewith, viz.

It is my mind and will, that in case all my children shall die before arriving at the age of twenty-five years, without leaving any issue surviving them, or any or either of them, then and in such case, and from and immediately after the decease or intermarriage of my beloved wife, I give and bequeath unto Edward Wilson, Sr. of Liverpool, in Great Britain, and in case of his decease, to his executors or administrators, the sum of thirty thousand dollars, lawful money of the United States of America, in trust to be paid over by him or them, forthwith after receiving the same, to the overseers of the poor of the parish of Crowl, in Lincolnshire, in that part of the kingdom of Great Britain called England, for the use of the poor of the said parish ; and all the rest and residue of my estate whatsoever, in the event above mentioned, which may not have been previously disposed of agreeably to the provisions of my said will, I give, devise and bequeath unto Thomas Harrison, of Crowl aforesaid, his heirs, executors, administrators and assigns; and in case he should now be deceased, or should die before me, then I give, devise and bequeath the same unto his child or children, now born and hereafter to be born, and the issue of such of them as may be then dead, their heirs, executors, administrators and assigns, to be equally divided between them, part and share alike, as tenants in common, and not as joint-tenants, such issue taking, and among themselves equally dividing such part and share only as their deceased parent would have taken if living.

And I do hereby ratify and confirm all and every part of my foregoing will not hereby altered ; provided however, that nothing herein contained, shall be considered as impairing the annuity bequeated in my will to my said wife. In witness whereof, I, the said Benjamin Masden, have hereunto set my hand and seal, this twentieth day of October, in the year of our Lord one thousand eight hundred and thirty-four."

(Masden's Estate.)

On the 15th of June, 1837, the executors filed their accounts in the register's office, which being sent to the Orphans' Court, were referred to auditors for settlement and distribution according to law. The report of the auditors stated "that there were in the hands of the executors, certificates of stock, and of public loans, and bonds and mortgages, amounting together, at the valuation or prices therein set down, to                                                                $90,580 31

Which with the balance of cash                                             223 25

Forms an aggregate of                                                    $90,804 56

To be disposed of according to the directions of the will."

After stating the provisions of the will, the report proceeded:

" The testator's wife, Hannah, survived him, and is still living.

At the date of the will and at the period of his death, the testator had the following children, viz:

*Ann*, born on the 16th of March, 1822.

*Mary*, born on the 30th of July, 1827.

*Benjamin*, born on the 5th of March, 1831.

The testator died on the 6th of April, 1836.

Benjamin, one of the children, died on the 26th of March, 1837, aged six years; and Ann, on the day following, viz. the 27th of March, 1837, aged 15 years.

The question upon these facts which we are required to report upon is, what distribution or disposition is to be made of the balance in the hands of the executors.

It was contended on the part of the widow, that upon the death of Benjamin, one of the infant legatees, on the 26th of March, 1837, his one-third of the fund vested in his surviving sisters absolutely, and consequently, that on the death of Ann, on the 27th of March, her half of that third, went to her personal representative, and did not survive to her sister Mary.

It was also urged on the part of the executors, that the trusts as to the two-thirds of Benjamin and Ann ceased on their deaths, and consequently, that the executors were bound to pay over that proportion of the fund absolutely, viz. three-fourths to the surviving child, or her guardian, and one-fourth to the personal representative of the deceased daughter.

It appears to us abundantly clear, both from the will and the codicil, that the general and paramount intention of the testator, was to give his property to his children, and the survivors and survivor of them, and to limit his wife to a small income during her life, with the addition of such profit as she might make out of the allowance of $500 a year, for each of the children during their minority, but to be reduced to a still smaller annuity in the event of her marrying again. It was also, we think, his obvious and pervading intention

to keep the estate together in the hands of the trustees, and with the surplus of income to create an accumulating fund for the benefit of the children, and the survivor, at the age of 21 years.

We think that these intentions are sufficiently manifest in the will, but if any doubt could be entertained in respect to that, the codicil which gives the whole over to strangers on the death of all the children under 25, without issue, indicates so clearly his views as to render the absolute vesting of any part during the minority of the children, impracticable, consistently with these paramount intentions.

Then if such was his design, is there any rule or principle of law, which forces upon us a construction of the will, which would defeat this intention by vesting absolutely the shares of the children, who may die under twenty-five years, in the survivors, so as to make them transmissible to their personal representatives?

It appears from the authorities that where *distinct* legacies are given with survivorship, the clause relating to survivorship, unless extended by particular words—attaches only to the original shares, and does not affect the accruing shares, which therefore become vested in the individuals, who are the survivors for the time being. Where, however, the disposition is of an *aggregate* fund, which the testator meant should so remain until a certain time fixed for division, the rule is otherwise.

We submit that it will appear from an examination of the will and codicil, that the intention of the testator in this case, was to keep the fund together for the benefit of the survivors. It is true, that there are passages which seem to imply the contrary, and there is considerable obscurity in other passages; but taking into view the bequest to the trustees of the whole residue, the directions as to the accumulating fund, the provisions for the management of the trust, and the dispositions of the codicil, we think that there is least difficulty in this view, and less probability of running counter to the design of the testator.

The direction to "pay or assign" the share or portion of the deceased child, or the securities thereof, to the survivors or survivor, which has been much relied upon in the argument for the widow, it appears to us must be read in connection with the provisions for the continuance of the trust, and in harmony with the great and overruling intent, which was to keep the estate in the hands of the trustees, until the arrival of the children respectively at the age of 21 years, and to continue the trust beyond that for certain purposes.

To suppose that the trust was to cease as to the share of one or more dying, would imply that the testator intended to leave one-sixth, or as the case might be, one half of his whole estate, liable to be thrown into the hands of infants, without any control over its disposition, or, perhaps, to be held by their mother, in her right of guardian, whose authority he has expressly limited to the guardianship of their *persons,* and that only during her state of widowhood; while

in the event of all living, he has carefully provided against this result, by creating a trust. In other words, if we suppose that the personal estate amounted at his death to ninety thousand dollars, then in order to sustain the argument of his intention to break up the fund on the death of a child, and to exclude survivorship of the accrued share, we must suppose that on the death of one child, he intended that thirty thousand dollars should be taken from the hands of the trustees, and be entirely at the disposal of the surviving children; and on the death of a second child, that an additional sum of thirty-thousand dollars should be discharged from the trust, and in all the sum of sixty thousand dollars out of the ninety thousand dollars should be let loose from all trusts, and vest absolutely, in the surviving infant; so that if she lived and married, it would pass to her husband, without any of the guards respecting her separate use, which he has carefully provided; and if she died, it would go to her mother, or her mother's family.

We cannot, looking at the general scope of the will, and the earnestness and caution with which the trust is guarded, suppose that such was his intention. We are inevitably led to the conclusion, that the trust remains as to the accruing or surviving shares, as well as to the original shares. And, such being the intent, and the object being to keep the fund together, it follows that the whole survived to the surviving child, and that no part is distributable to the administrator of the deceased daughter. In this view, we think that we are sustained by the authorities; especially by the cases of *Worledge* v. *Churchill,* (3 Bro. Ch. Cas. 465,) and *Barker* v. *Lea,* (*Turner's Ch. Rep.* 413.)

We have, of course, nothing to do with the reasonableness of the will, or the hardship of the situation in which the widow is placed, by the loss of pecuniary means being the consequence of the loss of her children; our business being merely to carry out the intentions of the testator, according to the best of our judgment; but it appears to us that in the event of the death of *all* the children, without issue, before arriving at the age of 25 years, she will by necessary implication from the words of the codicil, be entitled to the interest of the fund during her life or widowhood. A strong case in support of this view will be found in *Bird* v. *Hunsdon,* (2 *Swanston,* 342.) We are not called upon, however, to decide this point, and now advert to it, merely on account of its connexion with the general intent of the testator.

With the views which we have expressed relative to the true construction of the will in this case, we report that the whole of the balance in the hands of the executors, is to be retained by them as trustees for Mary Masden, the surviving child of the testator, subject to the limitations contained in the codicil to the said will."

Exceptions were filed to this report on behalf of the executors,

(Masden's Estate.)

and also on behalf of Mrs. Masden, the widow; and after argument the following decree was made by the Orphans' Court.

" This cause came on to be heard on the 15th day of November, A. D. 1837, before the honourable Edward King and his associates, in the presence of counsel, on the part of the executors of the said B. Masden, deceased, and on the part of Hannah Masden, widow of said Benjamin, and of the guardian ad litem of Mary Masden, the only surviving child of said Benjamin Masden. Whereupon upon debate of the whole matter, and hearing the will of said Benjamin Masden, the auditors' report, and the exceptions thereto, and what was alleged on behalf of the said parties, the Court did think fit to order and decree—

That upon the construction of said will, the said executors should pay over, and assign the securities for one equal half part of the estate of the said Benjamin Masden, jr. (the son of the testator) derived from his said father, exclusive of the accumulating fund mentioned in said will, unto the personal representative of the late Anne Masden, daughter of said testator. And further, that the said executors should pay over and assign the securities, for the remaining moiety of the estate of the said Benjamin Masden, jr. derived from his said father (exclusive of the accumulating fund) to the guardians of Mary Masden, for her sole use and benefit. And further, that the executors should pay over and assign the securities for the whole of the estate of the said Ann Masden, deceased, being the one-third of the residuary estate of the testator, exclusive of the accumulating fund, unto the said guardians of Mary Masden, for her sole use and benefit. And further, that the remainder of the said estate, including the accumulating fund, shall remain in the hands of the said executors, to be applied according to the directions of the said will. And lastly, that the costs of all parties, shall be allowed to them respectively, or paid by the executors out of the whole estate."

An appeal from this decree was taken by the guardians *ad litem* of Mary Masden, and the following errors assigned.

" 1. That the Orphans' Court erred in ordering the executors of Benjamin Masden, deceased, to pay over and assign the securities for one equal half-part of the estate of Benjamin Masden, jr. (the son of the testator) derived from his said father, exclusive of the accumulating fund mentioned in the said will, unto the personal representatives of the late Ann Masden, daughter of the testator.

2. That the Orphans' Court erred in ordering the said executors to pay over and assign the securities for the remaining moiety of the estate of the said Benjamin Masden, jr. derived from his said testa-

tor (exclusive of the accumulating fund) to the guardians of Mary Masden, for her sole use and benefit.

3. That the Orphans' Court erred in ordering the said executors to pay over and assign the securities for the whole of the estate of the said Ann Masden, deceased, being the one-third of the residuary estate of the testator, exclusive of the accumulating fund, unto the said guardians of Mary Masden, for her sole use and benefit.

4. That the Orphans' Court have not ordered the fund bequeathed to the said executors as trustees, to be retained by them as an aggregate fund, and that upon the death of either or both of the children, the accruing shares to survive and pass to the executors as trustees for the use of the remaining children or child."

Mr. *Emlen*, for the appellants argued, that it was the manifest intention of the testator to keep his estate together, for the benefit of his children and the survivor of them; and in the event of a failure of issue, to give the whole of it to the English legatees. The several clauses in the will were examined and commented on, to show the intention of the testator, 1st, In respect to a provision for his wife, and 2nd, In regard to his children. It was contended also, that the intention was to keep the property together as an aggregate fund. If such were the intention, the question is, whether there is any rule of law which interferes with it? No such rule has yet been recognised in this state, nor in any other state except North Carolina. *M'Cay* v. *Henderson*, (3 *Murphy*, 21.) The rule as it prevails in England has often been regretted and censured. 2 *Roper on Legacies*, 276. 288. *Payne* v. *Benson*, (3 *Atk.* 78.) *Exparte West*, (1 *Bro. C. C.* 575.) The following cases were also cited. *Rudge* v. *Barker*, (*Forrester*, 124.) *Barnes* v. *Ballard*, (cited 3 *Atk.* 79.) *Vandergrift* v. *Blake*, (2 *Ves. Jr.* 534.) *Barker* v. *Lea*, (*Turner's Chan. Rep.* 413.)

Mr. *Sharswood*, contra, argued—

1. That on the death of the children, the trust as to their respective shares ceased.

2. That on the death of Benjamin, his share vested in his sisters, as tenants in common; and on the death of Ann no further survivorship took place.

3. That the codicil gave Ann only that portion of the estate which might be undisposed of on the death or marriage of the wife, and on the death of the children without issue.

1. The words "pay and assign," in the clause of the will relating to the death of the children, are used in four other places in the will, and in all of them it is indispensable that the legal estate should pass out of the trustees. The will is technically drawn from begin-

(Masden's Estate.)

ning to end. The passages in question can't be made to harmonize with the supposed general intent, without reforming the whole will. The rule is, that where we find an express direction in technical language, it must be a very plain case of general intention to over-rule it. *Jeremy's Equity*, 53. It was evidently the intention of the testator, that she should continue to reside in his house; yet this would be impossible, upon the $500 a year, which the argument on the other side would reduce her to. The trust could not have lasted as to grandchildren, yet this is part of the same clause.

2. The general rule is admitted to prevail in England; but this is supposed to be intended as an aggregate fund, which is said to form an exception, though the distinction between this and separate funds is not very clear. The cases certainly do not countenance the idea, that the provisions of this will would create an aggregate fund. *Rudge* v. *Barker*, (*Cas. Temp. Talbot*, 124.) *Perkins* v. *Mickleth-waite*, (1 *P. Wms.* 274.) *Crowden* v. *Stone*, (2 *Russell*, 217; S. C. 3 *Eng. Chan. Cas.* 369.) In the last case there was a trust and an aggregate fund, yet the accruing shares were held not to survive. *Jackson* v. *Ford*, (1 *Tamlyn*, 85; S. C. 5 *Eng. Chan. Rep.* 297.) The act of assembly of this state prevents any joint-tenancy existing. This act applies to all species of estates, whether equitable or legal. This will constituted a tenancy in common then; and this seems to be admitted in the opposite argument. The words used in this will are technical words, well understood by the penman. *Woodward* v. *Glassford*, (2 *Vernon*, 388.) *Fearne on Rem.* 555-6. Mr. *Butler's note.* It is evident that from the outset of the will, the testator meant that the respective shares should be separated. The executors would have been bound to open separate accounts. The testator meant that they should have equal shares of the residue. Suppose one of the daughters married at eighteen, while the others remained single to twenty-five; the first would receive two thousand dollars, as an outfit, and interest on thirteen thousand dollars until twenty-one. The words are "to be paid in just proportions," meaning that the shares should be equalized. So the word "respective" is used.

3d. The words "previously disposed of," in the codicil apply to the provisions in favour of the children; and the codicil gave to the legatees in England, only that portion of the estate which might be undisposed of on the death or marriage of the wife, and on the death of the children without issue.

Mr. *Meredith* on the same side.

1. If these legacies vested at the death of the testator, then the clause of survivorship is not good, being dependent on an indefinite failure of issue. Here is an absolute legacy to children, merely postponing the time of payment, which the authorities show, does not prevent their vesting. *Roper on Legacies*, 376. There is no case where the fund is given as one legacy, payable at different times, in

which the Court has said that the legacy did not vest.  The first part of the clause gives the children an estate tail in personalty which is equivalent to a fee simple.  *Walter* v. *Drew,* (*Comyn's Rep.* 373.)  *Beauclerc* v. *Dormer,* (2 *Atk.* 208.)  *Tothill* v. *Pitt,* (1 *Madd. Ch. Rep.* 488.)  The words " in default of such child or children, or issue of such," mean an indefinite failure of issue.  *Wilmot* v. *Wilmot,* (8 *Ves.* 10.)  If these words give an estate tail, the word " such," does not make any alteration.

2. Supposing the clause to be free from the objection, that the limitation over is too remote, it is clear from the authorities, that the accruing share went to the personal representatives of Ann.  In *Wilmot* v. *Wilmot,* the words were the same as here.  It is not very clear what is meant by an aggregate fund.  If the legacy vested, there is certainly nothing like an aggregate fund.  Joint-tenancy is out of the question in this state.  *Mackell* v. *Winter,* (3 *Ves. Jr.* 536,) turned upon the vesting of the legacy.  So did *Barker* v. *Lea.* Suppose Ann had survived Benjamin for a longer space, would not the trustees have been bound to assign her portion of his share to her ?  The precedents of wills expressly recommend that provision should be made for accruing shares.  The intention of the testator was, to give his wife a sufficient income, which the opposite construction would prevent.  It is settled, that when one executory devise has vested, all others following it are void.  *Fearne,* 513, section 8.

Mr. *Scott* in reply, [having been told by the Court, that he need not speak to the point of the bequest over being too remote,] contended, that the whole of the interest of Benjamin, as well as the whole of that of Ann, must vest eventually in Mary, if she lives, and that this conclusion results from the language of the clause itself, as well as from the general provisions of the will.  1st, The bequest over, upon the death of a child, without issue, is to persons who cannot be ascertained until the time when the deceased child would have reached twenty-five, if it had lived ; in other words, the bequest over cannot vest in any person till that time.  The word *then* refers to the time at which the dying child would have reached twenty-five. It is clear that he did not contemplate so early a death.  If the word refers to the death of the child, it might have cut out a posthumous child.  Nor is it likely that a man, who so carefully postponed the enjoyment of the fund by his own children, up to their age of twenty-five, would have adopted a different rule as to the children of a child. 2d. The original bequests did not vest, and cannot vest until a period of time which can never occur to Benjamin or Ann, because they have died at too early an age, and which may or may not occur to Mary.  I agree, that where the legacy is given to a specific person, but to be paid at a future day, and there is nothing more in the will to explain the intention, such legacy shall be regarded as vested.

Here, however, there are other provisions, which show the intention to have been otherwise. The codicil is, of itself, sufficient to prevent the operation of this rule. The words of the particular clause, look the same way. It was admitted in the opposite argument, that the legacy was to go over on certain events. Then how could the principal be paid or assigned to any child, before the time fixed in the will? 3rd. There is upon the general frame of the will, as well as in the words of the clause, a bequest over to each survivor, not merely of the share of the last decedent, but, of accrued shares. Nothing is given to the wife, but the income of the house. Her sons were to be put out apprentices, and were to have only five thousand dollars a piece at twenty-one, to commence business with. The daughters were to receive two thousand dollars each, on their marriage, &c., and a provision was made for the appointment of trustees for the married daughters. The construction contended for on the other side, would defeat the intention in all these instances. Suppose there had been six children instead of three, there would be no fund at all left for the operation of the codicil. *Jacobs* v. *Bull*, (1 *Watts*, 370.) *Miller* v. *Snyder*, (5 *Rawle*, 140.) The supposed rule of the English Courts, can be nothing more than a rule for the discovery of the intention of the testator, which is very obvious here; and after all, the exceptions are as numerous as the cases within the rule. The cases of *Worledge* v. *Churchill*, and *Barker* v. *Lea*, are in point, and have not been answered.

. The opinion of the Court was delivered by

Sergeant, J.—It has long been an established rule, that provisions disposing of the shares of devisees and legatees, dying before a given period, do not *proprio vigore* exend to shares accruing under that disposition. As where a man gives a sum to be divided amongst four persons, tenants in common, and declares that if one (or rather if any) of them die before twenty-one or marriage, it shall survive to the others. If one dies and three are living, the share of that one so dying, will survive to the other three: but if a second dies, nothing will survive to the remainder, but the second's original share; for the accruing share is as a new legacy, and there is no further survivorship. Per Lord Hardwicke in *Pain* v. *Benson*, (3 *Atk.* 80.) See also *Perkins* v. *Micklewaite*, (2 *Ch. Rep.* 171; S. C. 1 *P. W.* 274.) *Rudge* v. *Barker*, (*Cas. Temp. Talb.* 124.) *Barnes* v. *Ballard*, before Lord King, cited 3 *Atk.* 78. So in *Exparte West*, (1 *Bro. C. C.* 575,) where a testator bequeathed to A. B. and C. the three sons of S. £1000 each, the interest to be added to the principal yearly, until they should respectively attain the age of twenty-one years: and in case any of them should die before that age, then to the survivors; A. died under twenty-one, and then B.; and the question which was raised upon petition was, whether that part of the share of B. which

*(Masden's Estate.)*

accrued to him on the death of A. went over to C. on the death of B. Lord THURLOW thought it did not survive again, but, hesitating to decide it upon petition, a bill was filed, and the cause came to a hearing before Sir LLOYD KENYON, M. R. who decided against the survivorship of the accruing share. 2 *Pow. Dev.* 724.

According to these established principles, the direction to the executors in the proviso of Benj. Masden's will, in case any or either of his children should die without having received his or her portion and without arriving at the age of twenty-five years, and not leaving issue living at the time of his or her decease, (which seems to be the true construction of the clause,) then to pay or assign the same, or the securities thereof, to the survivor or survivors of any children who might be then living, and the issue of such as might be dead, did not carry over to the last surviving child, Mary, or the executors in trust for her, the moiety which had accrued to Ann, by reason of the previous decease of Benjamin Masden, without issue ; but that moiety of Benjamin's share having become vested in Ann, as her absolute estate, by the death of Benjamin, passed on her decease, to her personal representative, and not in trust for Mary the survivor.

Although this is the clear construction of the proviso in this will, yet if there be other clauses in the will and codicil controlling the proviso, and rendering another construction necessary, in order to reconcile the whole instrument and to effectuate the manifest intention of the testator, we should be bound to give effect to them, however strong the language might be in the proviso alone. But on examining the whole structure of this will, and comparing its different provisions, I am unable to find any such intention manifested.

Mere conjecture is not sufficient: there must be a plain and apparent intention, capable of being collected from the will and codicil.

The suggestion is, that there is an intention shown in the will and codicil, to keep the estate together as an aggregate fund, until the children respectively should arrive at the age of twenty-one and twenty-five years, and that if any died before the age of twenty-five, without leaving issue, their portion not paid over, was to be kept together by the executors in trust for the survivors or survivor ; and in the event of the death of all of them, before that event, and the death or marriage of the widow, the whole was to go over to the residuary legatees.

There can be no doubt, that if such a provision were apparent on the face of the will and codicil, the testator had full power to make it, and it would be binding on the Court to carry it into effect without regard to the consequences which would result to the widow or descendants of the testator. But I can perceive no such intention plainly expressed or capable of being drawn from the instruments. In the first place, this construction cannot be reconciled with the proviso in every event that might have happened. For by it, the

death of any one or more of his children before twenty-five, leaving children, is contemplated, and provision is made for these children, (and even for the issue of these children, which it is manifestly impossible there should be before that time,) and it directs the share of the child so dying, to be paid or assigned over to his or her children, &c. But if we suppose Ann to have lived to the age of eighteen, and then to have married and had children, and died at twenty-one leaving a child or children, which might well have happened, then it seems to me, according to the argument, that all was meant to be kept as an aggregate fund, these children must be destitute of support from their grandfather's estate, and must so continue till it should be ascertained whether the other child or children would survive to the age of twenty-five, which if Benjamin should live to that time, would be about fourteen years. The same thing might have occurred as to Mary, for the five hundred dollars per annum to the testator's children was to stop on their death. These considerations render it probable that he intended his grandchildren should take their parents' share, as a vested estate, immediately on the death of such parent, which is in correspondence with the express and positive language of the proviso; and the direction over to the survivors, in case of the death of the children without issue, is in the same language, and to take effect at the same time as is directed in relation to the issue of the children in case there were such issue; and I do not perceive how they can receive different constructions.

The codicil, however, is mainly relied on. It provides, that in case all his children died before arriving at twenty-five years of age, without leaving issue surviving, then, and in such case, from and immediately after the decease or intermarriage of his wife, he bequeaths over the sum of thirty thousand dollars, in trust for the overseers of the poor of the parish of Crowl, in Lincolnshire, England, and all the rest, residue and remainder of his estate, whatsoever, in the event abovementioned, *which may not have been previously disposed of*, to Thomas Harrison, &c. Had he given over *the said trust money*, in case all his children died before twenty-five without issue then living, it might resemble the case cited of *Worledge* v. *Churchill*, (2 *Bro. Ch. Cas.* 465,) and there might perhaps be some reason for saying, as Mr. J. BULLER did in that case, that it was the testator's intention to keep the whole as an aggregate fund till that event occurred, and that in the meanwhile no accruing share should vest in any of the children or their issue. It may be observed however, that merely a gift over, in case *all* the legatees die without leaving issue, does not necessarily indicate that a limitation to survivors in case of the death of *any* without leaving issue, is intended to carry the accruing shares; *Vanderguht* v. *Blake*, (2 *Ves. Jr.* 534); though such a clause divests the accruing as well as the original shares of all, on the happening of the prescribed event. 2 *Pow. Dev.* 727. But here the testator only gives over thirty thousand dollars, and

then *what may not have been previously disposed of*, under the will, leaving the question open, how it was to be disposed of under the will, and giving over only what was left. So in *Pain* v. *Benson*, (3 *Atk.* 80,) the meaning of the testator was, that the bequest should go among such persons as should be living at the decease of his father and mother; but here it is such as should be living at the death of a child without issue, and not, as has been argued, when the children should attain twenty-five or any other future point of time, for which it was to wait before it could vest. In *Barker* v. *Lea*, (1 *Turn. & Russ. Chan. Rep.* 413,) the bequest was, "in case of the death of any or either of the children unmarried and without issue, then he gave and bequeathed the part or shares of him, her, or those so dying without issue, unto the survivors or survivor of them, equally share and share alike, *and to be paid to them respectively at the same time along with their original shares*," and the original shares were bequeathed in the first part of the will, "on their, his or her respectively attaining the age of twenty-five years." This was held by the Chancellor to be annexed to the substance of the bequest, and that they were contingent, and nothing vested in any till twenty-five, but in the mean time the whole to be kept as an aggregate fund. But in the case before us, the bequest to the survivors in the proviso, is not to wait until they attain twenty-five, but presently on the decease of any before attaining twenty-five, and becomes then vested.

As to the argument, that if the accruing shares do not go over, there will not be sufficient left to answer the thirty thousand dollars bequeathed by the codicil, this is founded on conjectural estimates, which may or may not be correct. In some events there would be ample, even without the accumulating fund, which has been left subject to the directions of the will.

Decree affirmed.