# Stille's Estate.

*Wills—Construction—Trust and trustees—Remainders.*

Testator gave his residuary estate to trustees in trust to pay one-third of the income to his wife for life, and one-fourth part of the remaining income, and after the death of his wife the one-fourth part of the entire income of the residuary estate to L. a granddaughter for life without power of anticipation or alienation and after her death "to hold the one-fourth part of the trust estate to and for the use of any child or children of my said granddaughter and the issue of any deceased child or children of her who may then be dead leaving issue in equal parts and shares per stirpes." He directed that one other fourth part of the net income should be paid to A. a grandson and brother of L. under the same terms as the gift to L., except that such income should not be subject to any debts, contracts or engagements of A. He further directed that one-half part of the net income should be paid to H., a son, under the same terms as the gifts to A. He also directed that no transfer of capital should be made to any children or issue until they should become of full age. His will continued as follows: "In case my said granddaughter L. shall die without leaving any child or children or issue her surviving then the one-fourth part of the capital of the said trust estate shall be held in trust to and for my grandson the said A. or in case he shall then be dead to and for his child, children or issue per stirpes: In case my said grandson A. shall die without leaving any child, children or issue him surviving then the one-fourth part of the capital of the said trust estate shall be held in trust to and for my granddaughter the said L. or in case she shall then be dead to and for her child, children or issue per stirpes: And in case both of my grandchildren L. and A. shall die without leaving any child, children or issue surviving him then and in that case the two-fourths part of the said Trust Estate which were held in trust for their lives shall be held in trust to and for my son H. if then living and in case he shall then be dead to and for his child, children or issue per stirpes: And in case my said son H. shall die without leaving any child, children or issue surviving him then and in that case the one-half of the said trust estate which was held in trust for him shall be held in trust to and for my said grandchildren L. and A. in equal shares and in case they or either of them shall be then dead then in trust for their children or issue per stirpes: And in case all of my said grandchildren and also my said son shall die without leaving any child,

children or issue them surviving then and in such case all of the said trust Estate shall pass to and become vested in the College of Physicians of Philadelphia." A. died after the decease of the testator without issue during the lifetime of L. his sister, and H. his uncle. At his death L. had three children, two being minors, and H. had four children, all of age. *Held,* (1) that under the will L. and the children or issue of A. had alternate remainders in fee in A.'s share, good as contingent remainders; (2) that upon A.'s death without issue, L. surviving, the trust ended as to his share, and L. was entitled to the corpus of it at once; (3) that the limitation over to L. with the succeeding words meant an indefinite failure of issue, and the words "or in case she shall then be dead," meant her death within the lifetime of A., and as she survived him she was entitled to an absolute estate in A.'s share; (4) that the restrictions imposed upon the original share, did not extend to A.'s share of the corpus after death; (5) that there was nothing in the remaining portions of the will that justified the contention that the vesting of L.'s absolute estate in A.'s share should be set aside, and in its place a life estate should be substituted in L. with alternate remainders in fee to her children, to her uncle H. and to the College of Physicians.

In construing this will the court took into consideration that a positive grant should not be taken away by implication; that there was no presumption of intestacy; that the heir is always to be preferred in the disposition of property; that where there is doubt as to the character of an estate that has been devised, judicial inclination is to prefer an absolute estate to a contingent estate, or, in other words, a fee is preferred to a life estate, and that immediate vesting of property as soon as possible is favored.

Restriction upon original shares given under a will do not extend to accrued shares in the absence of a clearly expressed intention to that effect.

Argued Oct. 10, 1917. Appeal, No. 77, Oct. T., 1917, by Lina Ives Brinton, from decree of O. C. Philadelphia Co., Jan. T., 1901, No. 176, dismissing exceptions to adjudication in Estate of Alfred Stille, deceased. Before ORLADY, P. J., HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Exceptions to adjudication.

From the record it appeared that Alfred Stille died, leaving to survive him a widow, Katharine, a son Henry

M. Stille, and two grandchildren Alfred Stille Ives and Lena Ives Brinton, children of a deceased daughter. Alfred Stille Ives died on May 13, 1915, without issue. At that time Mrs. Ives had three children, two of whom were minors and Henry M. Stille had four children all of age.

The material portion of the testator's will was the residuary clause, which was as follows:

Twentieth.—I hereby direct and declare that the whole of my Residuary Estate real and personal including therein the Estate derived from my mother Mrs. Maria Stille who died on the twenty eighth day of October 1838, shall be conveyed transferred and assigned unto The Pennsylvania Company for Insurances on Lives and Granting Annuities to be held by them IN TRUST to invest the same and keep the same invested, with power from time to time to change investments and again to reinvest, and to pay over one full third part of the net income derived therefrom unto my wife Katherine in equal quarterly payments during the full period of her life for her maintenance and support and without power on her part of anticipation or alienation and from and immediately after her death I order and direct that all Capital which may have been set apart to produce such income and all the investments thereof and any increment thereof and all unexpended and accumulated income thereof shall fall into and become a part of my residuary estate.

And upon further Trust to pay over one full equal fourth part of the remaining net income of said Trust Estate (and after the death of my wife the one fourth part of the entire income of my residuary estate) unto my granddaughter Lina Ives Brinton for and during the full period of her life for her maintenance and support and without power on her part of anticipation or alienation and from and immediately after her death to hold the full one fourth part of the said Trust Estate (increased after the death of my wife as aforesaid) to and for the use of any child or children of my said granddaughter

and the issue of any deceased child or children of her who may then be dead leaving issue in equal parts and shares per stirpes.

And upon further trust to pay over the one other full equal fourth part of the remaining net income of the said Trust Estate (and after the death of my wife the one fourth part of the entire income of my residuary Estate) unto my grandson Alfred Stille Ives for and during the full period of his life for his maintenance and support and without power on his part of anticipation or alienation and in such manner that the same shall not be subject or liable to any of his debts contracts or engagements. And from and immediately after his death to hold the said full one fourth part of the said Trust Estate (increased after the death of my said wife as aforesaid) to and for the use of any child or children of my said grandson and the issue of any deceased child or children of his who may then be dead leaving issue in equal parts and shares per stirpes.

And upon further Trust to pay over one full equal half part of the remaining net income of the said Trust Estate (and after the death of my wife the one half part of the entire income of my residuary Estate) to my son Dr. Henry Mandeville Stille for and during the full period of his life for his maintenance and support and without power on his part of anticipation or alienation and in such manner that the same shall not be subject to his debts contracts or engagements: And from and immediately after his death to hold the full equal one half part of the said Trust Estate (increased after the death of my said wife as aforesaid) to and for the use of any child or children of my said son and the issue of any deceased child or children of his who may then be dead leaving issue in equal parts per stirpes: Provided always that no transfer of Capital shall be made to any of such children or issue in case any of them shall be minors, until they shall respectively become of full age, and that the income arising from their shares shall dur-

ing minority be applied to their maintenance and support. In case my said granddaughter Lina Ives Brinton shall die without leaving any child or children or issue her surviving then the one fourth part of the Capital of the said Trust Estate shall be held in Trust to and for my grandson the said Alfred Stille Ives or in case he shall then be dead to and for his child, children or issue per stirpes: In case my said grandson Alfred Stille Ives shall die without leaving any child, children or issue him surviving then the one fourth part of the Capital of the said Trust Estate shall be held in Trust to and for my granddaughter the said Lina Ives Brinton or in case she shall then be dead to and for her child, children or issue per stirpes: And in case both of my grandchildren Lina Ives Brinton and Alfred Stille Ives shall die without leaving any child, children or issue surviving him then and in that case the two fourths parts of the said Trust Estate which were held in Trust for their lives shall be held in trust to and for my son Dr. Henry Mandeville Stille if then living and in case he shall then be dead to and for his child children or issue per stirpes: And in case my said son Dr. Henry Mandeville Stille shall die without leaving any child children or issue surviving him then and in that case the one half of the said Trust Estate which was held in trust for him shall be held in trust to and for my said grandchildren Lina Ives Brinton and Alfred Stille Ives in equal shares and in case they or either of them shall be then dead then in Trust for their children or issue per stirpes: And in case all of my said grandchildren and also my said son shall die without leaving any child children or issue them surviving then and in such case all of the said Trust Estate shall pass to and become vested in the College of Physicians of Philadelphia in Trust nevertheless to keep · e same securely invested and apply the income thereof to the maintenance preservation and increase of the Medical Library of the said College of Physicians and the payment of the Librarian and other persons in charge of the said Library.

56, (1918).] Statement of Facts—Opinion of the Court.

The auditing judge awarded the corpus of Alfred S. Ives's share to the trustee to be retained for the purposes of the will. Exceptions to the adjudication were dismissed in an opinion by LAMORELLE, J. GEST, J., filed a dissenting opinion.

*Error assigned* was in dismissing exceptions to the adjudication.

*Sharswood Brinton,* for appellant.—The absolute estate in remainder given by the testator to his granddaughter Lina upon the death without issue of the life tenant, his grandson Alfred, is now cut down to a lesser estate because the testator later in his will provides that should Lina and Alfred and the testator's son Henry all die without issue all his estate should go to the College of Physicians.

*M. B. Saul,* of *Prichard, Saul, Bayard & Evans,* for appellees.—Rules of law and presumptions cannot be resorted to where the testator's meaning is clear: Horwitz v. Norris, 60 Pa. 261; Thompson's Est., 229 Pa. 542.

There seems to be no reason why the testator, having made a spendthrift trust of the original share of the appellant, should have intended that the accrued share should be paid to her absolutely. The income of her original share is for her support and maintenance, and without power of anticipation or alienation, and although apt words were not used, the language is sufficient to create a spendthrift trust: Jarmin Trusts, 1 L. R. 1; Douglas v. Andrews, 14 Beavan 347.

OPINION BY KEPHART, J., March 2, 1918:

Alfred Stille, the testator, left to survive him a son, Henry M. Stille, and two grandchildren, Lina Ives Brinton and Alfred S. Ives, they being children of a deceased daughter, Maria S. Ives. Alfred S. Ives died without issue during the lifetime of his sister and uncle. Mrs.

Brinton at that time had three children, two being
minors, and Henry M. Stille four children, all of age.
By the will of Alfred Stille he devised and bequeathed
his residuary estate to a trustee, in trust to pay one-
quarter of the income to his granddaughter for life, one-
quarter to his grandson for life, and one-half to his son
for life.   Upon the death of each, the trustee was to hold
the same proportion of principal to and for the use of
their respective issue.   And in the case of the death of
a grandchild without issue, to and for the use of the
other grandchild, or, in case of such other's prior death,
to and for the use of the other's issue.   And in the case
of the death of his son without issue, to and for the use
of the other two grandchildren, or, if previously de-
ceased, their issue.   Or, to more clearly state the scheme
of disposition by considering what may be called the
"Alfred" share over which this contest is predicated
—and this scheme with respect to the "Alfred" share is
the same as the other grandchild and son except the
nominee of the remainder—(a) the testator directed
that the trustee should pay to Alfred during his life one-
quarter of the income of his residuary estate; (b) that
on Alfred's death the trustee was to hold one-quarter of
the trust estate for the use of his child, children or issue
per stirpes; (c) should Alfred die leaving no child, chil-
dren or issue him surviving, then the one-quarter of the
trust estate was to be held in trust to and for Lina Ives
Brinton; (d) or, in case she shall then be dead, to and
for her child, children or issue per stirpes.

We will consider the various clauses in the will which
affect the disposition of the testator's property, and the
effect of Alfred's death, without issue, on the one-quarter
of the trust estate, the income of which had been paid to
him during life, before discussing the subsequent pro-
visions which might have a tendency to operate against
the conclusion reached with respect to this part of the
will just quoted.   By it Lina, and the children or issue of
Alfred, had alternate remainders:  Dunwoodie v. Reed, 3

S. & R. 434, 435; Frasier v. Scranton Gas and Water Co.,
249 Pa. 570; Taylor v. Taylor, 63 Pa. 481. The vesting
of the estate in the children, if Alfred had had children,
would cause Lina's remainder to be absolutely void, and
so the vesting of the estate in Lina absolutely renders void
the contingent remainder in Alfred's issue.  Alternate re-
mainders in fee are good as contingent remainders. Had
Alfred died leaving issue, under the language in the will
the Statute of Uses would have converted the "Alfred"
share into an absolute estate in such issue, though a use
or spendthrift trust had been imposed on the original
share during Alfred's life in his favor.  Such restriction
did not appertain to nor was it imposed on that share as
it would go to the children or issue.  The trustee, under
the will, was to hold the "Alfred" share "to and for the
use of any child or children of my grandson, and the issue
of any deceased child or children of his who may then be
dead leaving issue in equal parts and shares per stirpes."
The will thus far raised no remainders or future inter-
ests to be protected or preserved by the trust just men-
tioned, and as the trust created was for Alfred's benefit,
it ceased at his death, at least for the purpose it was cre-
ated.  There was no active duty to be performed and it
was therefore a dry trust.  The statute of uses was in-
tended to operate on language such as that used in the
will.  It has been suggested that being a passive trust,
there being nothing for the trustee to do but distribute
the estate, the cestui que trust, Lina, was entitled to an
assignment of this quarter.  See Bradley's App., 15
Philadelphia 656; McCune v. Baker, 155 Pa. 503.  We
are assuming that the child or children were over age at
the time of Alfred's death.  If they were under age, that
would not disturb the vested character of the estate in
such issue, the time of enjoyment of the corpus being
postponed by the will until the minor arrived at the age
of twenty-one: Siegwarth's Est., 33 Pa. Superior Ct.
622.

64          STILLE'S ESTATE.

We have dwelt somewhat at length on this subject to more clearly bring out subsequent provisions of the will. Alfred died without leaving any child, children or issue surviving him, but left his sister, Lina, to survive him. Under the will, the "Alfred" one-quarter of the capital was to be held in trust "to and for my granddaughter the said Lina Ives Brinton or in case she should be dead to and for her child, children or issue." The same observation may be made with respect to this devise as was made to that part of the will where it is assumed that Alfred died leaving children to survive him. The limitation over to Lina, followed by the words "and in case she shall then be dead then to and for her issue," meant an indefinite failure of issue and the provision "or in case she shall then be dead" means her death within the lifetime of Alfred, and if she be living at the time of his death she acquires an absolute estate in the Alfred share: McCormick v. McElligott, 127 Pa. 230; Throckmorton v. Thompson, 34 Pa. Superior Ct. 214; Stoner v. Wunderlich, 198 Pa. 158. This, as we said before, though the testator says it shall be held in trust, did not have the effect of imposing upon this share of the corpus the restrictions found in the original share, the income of which was paid to the grandchild. See Judge PENROSE'S opinion, in Lang's Est., 16 Philadelphia 308, wherein he said: "It is an established rule that restrictions upon original shares do not extend to accrued shares in the absence of a clearly expressed intention to that effect: Masden's Est., 4 Wharton 428; Gibbons v. Langdon, 6 Simons 260." Livezey's Est., 245 Pa. 230; Ware v. Watson, 7 D. M. & G. 248; Moore's Trusts, 10 Hare 171; Mann v. Fuller, Kay 624.

It is quite clear then that up to this point in the will when Alfred died Lina took an absolute estate. It is after this we find ourselves in difficulty. If we attribute to the testator's language the ordinary and accepted meaning of words, it is impossible to carry out his will exactly as it is written. If we agree with the appellee

we are bound to disregard a paragraph which the testa-
tor intended to be fully operative.  To sustain its con-
tention would be to postpone the devolution of the tes-
tator's property not only contrary to the ordinary and
natural manner both as to time and persons, but inject
into the estate uncertainties never contemplated by the
testator.  The appellee maintains that this positive
grant of an absolute estate in the "Alfred" share should
be set aside and in its place a life estate in Lina should
be substituted with alternate remainders in fee to her
children, to her uncle, Henry, and to the College of
Physicians.  It urges that two subsequent clauses in the
will have the effect of reducing this absolute estate to a
lesser estate.  The clauses in question are as follows:
"(A) In case *both* of my grandchildren......shall die
without leaving any child, children or issue surviving
......then and in that case the *two-fourths* part of the
said trust estate which were held in trust for their lives
shall be held in trust to and for my son, Dr. Henry Man-
deville Stille, if then living, and in case he shall then be
dead to and for his child, children or issue per stirpes.
(B) in case *all* of my said grandchildren and also my
said son shall die without leaving any child, children or
issue them surviving then and in such case *all* of
the said trust estate shall pass to and become
vested in the College of Physicians."  Before discussing
these two paragraphs we will now refer to a preceding
paragraph in the will which appears after the bequest
or devise to the son and grandchild, and, as we view
the subject, its operation must be postponed beyond the
time mentioned or it materially assists in determining
the question before us.  It provides that at the death
of the son or either of the grandchildren the shares shall
go to their "child or children"; the capital was not to
be transferred to the children "until they become of full
age," and the income from their shares during minority
was to be applied to their maintenance and support.
Here is a positive direction that had Alfred died leaving

children who were of full age, such children would have
been entitled to the corpus of the estate.   Siegwarth's
Est., supra, and other authorities that may be cited.
To sustain appellee's contention we must hold that this
clause is inoperative and the children would not take
until they outlived both Lina and Henry that there
might not be a remote possibility of death without issue.
As an illustration, Henry, the son, has now four chil-
dren over age; if he should die his children would not be
entitled to the corpus of the "Henry" share until Lina
died (Alfred being dead).   This it claims is necessary to
meet the language of the will that there must be some
one of kin with capacity to take the testator's property
under his will.   The testator did not declare in his will
that Henry's issue would not take unless such issue sur-
vived the living grandchild, and the same may be said of
Lina's issue with respect to Henry.   Further, what is
to become of the income after the children arrive at the
age of twenty-one years?   The testator provides for its
application until the child is twenty-one but not after-
wards because he has given the principal to the chil-
dren.   There was not nor could not be a direction to ac-
cumulate the income (Act of April 18, 1853, P. L. 503),
and the testator did not die intestate as to such income.
As was said in Pennsylvania Company's App., 6 Sadler
173-176, "If it is to be equally divided but the period of
distribution to the children is postponed to the death of
the surviving life tenant, then there will be an intestacy
in one share from the earlier death until that time."   In
that case the court founded its decision on such intestacy,
which decision will be commented on later.   If we sus-
tain the operation of this clause until Lina and Henry
die, we not only hold up the distribution of the estate
and cause it to be dependent on contingencies never con-
templated, but prefer as remaindermen persons who are
not the next of kin, and this not only applies to a portion
of the estate but to all of it.   To do it we declare an in-
testacy as to a part of the estate, contrary to the express

intention of the donor, while an orderly arrangement will secure to the College of Physicians just such part of this estate that the testator meant that they should get. The testator did not implant the ultimate remainders as being the main purpose of his will. They were, on the other hand, the remote possibilities. It is not necessary to await the death of the survivor of the grandchildren and son before a distribution shall be made of the share of the deceased parent as represented by its income. There is no doubt that it was the intention of the testator that the children should take the parent's share immediately upon death, the enjoyment postponed until they arrived at majority.

With this aspect of the will in mind, assuming that Alfred had died leaving issue, how would it be possible to have later complied with the testator's language "if both of my grandchildren should die......the two-fourths part of my estate shall be held in trust to and for my son Henry"? The share devised absolutely to Alfred's children would pass by inheritance from them as their estate at death. It would not go as the testator's property to Lina or to Henry. The Lina share, on Lina's death without issue, would pass under the will, but it could not fill the exact words of this provision that two-fourths was to become a part of the Henry share. Or, to take this "Alfred" share as it now stands, it vested in Lina absolutely, and at her death passes as her estate. She had a life estate in her original quarter, that is, in the income. At her death, without issue, that quarter will pass under the testator's will. It is but one-quarter of the estate. We cannot presume that the testator intended that there should be an intestacy as to this quarter, represented by Lina's income, any more than he intended an intestacy as to the income of the children referred to above. By such intestacy the income or property would revert to the heirs of the testator. As to income see Nagle's Est., 83 Pa. Superior Ct. 93-96. But it was to pass under his will. It is the duty of the court

to construe his language to effectuate that purpose, so without doing violence to its ordinary meaning there will be no intestacy and the entire estate will be disposed of as contemplated. It is not difficult if you follow the testator's plan as he expresses it in the principal part of the will as is here first quoted. He deals with each quarter separately and attaches to them estates which, when the parties appeared with capacity to take, took the entire estate. Realizing, however, that there might be a possible intestacy, he provides for ultimate remainders and cross-remainders to prevent it. If, instead of saying "both" in the clause (A) just referred to, he had said in the "Alfred" share, "remainder to his children, if any, if not, to Lina, and if she be dead to her children, and if no children or issue survive, then to her Uncle Henry, and if he be dead to his children, and if no children survive him to the College of Physicians," and had used similar language with respect to the other shares, it is quite evident that there would be no question here, and that Henry, the son, would take Lina's share or Alfred's share in case either died without issue and there was no issue of the other grandchild to take. That is, we take it, what he meant when he used the word "both." It is manifest he did not use these words "both" and "two-fourths" in their conjunctive or entire sense, but in a several or distributive sense, and had reference to each one of the children, i. e., the survivor. The two-fourths referred to the shares of the two children not jointly but separately, independently, as identifying them, and in line with the preceding devise of the several estates. Two-fourths of the estate was not held jointly in trust for their lives when this clause of the will went into effect. One-fourth was held for Alfred's life and one-fourth for Lina's. In that sense two-fourths was held in trust for their lives but a quarter ceased as a trust estate on death with children. What the testator meant was the two-fourths or such part of it that was left if either grandchild should die

without issue and there was no one in being who could
be substituted under the will.    Should Lina die without
issue, Henry, if living, would be such person.    The words
are used in a descriptive sense, not to consolidate the
various shares or read into the disposition of accrued
shares, trusts and conditions not thought of by the tes-
tator.    And when you reach the devise to the College of
Physicians, it has reference to the children remaining
who die without issue and there is no kin of the testator
who under the will can be substituted.    "All" is used in
the sense of each one, or respectively, and in the same
light as both.    All of the estate means all of the estate
that is left with no one of kin who can take under the
will.    Referring to the Pennsylvania Company's appeal,
supra, affirmed by the Supreme Court, in that case the
property was given to trustees to lease and demise the
real estate and invest the personal estate and pay over
the income to the wife during the period of her natural
life, and after her death in trust to pay over and dis-
tribute the entire income and profits to his two daugh-
ters, Madeline and Mary during all the period of *their*
natural *lives,* and from and after the death of his said
two daughters, to give his residuary estate unto the child
or children, respectively, of his said two daughters and
the issue of such of them as may be then deceased, share
and share alike.    Mary died leaving one child.    Made-
line was still living and the Pennsylvania Company at-
tempted to hold the income from Mary's share as an ac-
tive trust until the death of Madeline.    The auditing
judge awarded the one-half of the residuary estate to the
minor absolutely.    Commenting upon the will, Judge
ASHMAN, who wrote the opinion confirming Judge PEN-
ROSE'S adjudication, speaks of the testator's line of
thought as treating the different interests as separate es-
tates, and in commenting on the peculiar phraseology of
the will where they are apparently joined until the death
of the survivor, says: "The exceptants would draw from
this the inference that, until both daughters should die,

the estate was to remain intact.   They ask how, if the estate were divided at the death of one daughter, could all of it remain for division at the death of the surviving daughter?   It would not be easy to answer this inquiry if the rules of interpretation compelled us to subject the language of a will to the same canons of criticism by which we approve or condemn a treatise on logic."

In an effort to arrive at a correct solution of the problem before us, we have kept in mind that a positive grant should not be taken away by implication; there is no presumption of intestacy; the heir is always to be preferred in the disposition of property; where we are in doubt as to the character of an estate that has been devised, judicial inclination is to prefer an absolute estate to a contingent estate, or, in other words, a fee is preferred to a life estate; and immediate vesting of property as soon as possible is favored.   It must clearly appear that it was the testator's intention to cut down an absolute estate into a lesser estate.   The natural tendency of the testator's mind was to prefer his kin to outsiders.   They were the chief objects of his bounty and around them he built up his will.   When he desired to create a spendthrift trust estate to protect the son and grandchildren, he naturally created remainders and cross-remainders between them to keep the estate within his immediate family, and he would naturally plan the disposition of his estate in such manner as to prevent a possible intestacy that might arise from a lack of kin to take a part or possibly all of his estate.   In the use of language he may have inaptly beclouded the main purposes, nevertheless, if the court is able to correctly ascertain the true intent, it should give effect to it.   That can be arrived at by a consideration of the entire document, and first, the chief thought or concern of the testator from the language used.   If that is confusing, or violence is done to the ordinary and accepted meaning of words, then we should endeavor to harmonize such language to have it conform to the main purpose by a con-

56, (1918).]       Opinion of the Court.

struction that will safely reflect the testator's purpose. There is no occasion to invoke the aid of artificial rules unless there is some ambiguity or uncertainty in the testator's language: Horwitz v. Norris, 60 Pa. 261; Thompson's Est., 229 Pa. 542.

We therefore hold that the appellant, Lina Ives Brinton, took an absolute estate in the "Alfred" share, and is entitled to receive that share at this time in the distribution of the property. The decree of the court below is reversed and the record is remitted that distribution may be made in accordance with this opinion.