## Taylor *versus* Taylor.

1. A devise was of all testator's real estate, "to my wife and daughter or the survivor during their lives, in case my daughter shall depart this life leaving lawful issue—to descend to such lawful issue, their heirs and assigns for ever—if my daughter die before her mother leaving lawful issue, such issue shall inherit their mother's right from the time of her death. If my daughter shall die not leaving lawful issue, my executors or the survivor shall sell, after the death of my wife, my real estate," and he gave the proceeds over one-half to relatives of his wife, the other half to his own " or their lawful issue." *Held*, that the daughter took an estate for life, remainder to her children in fee with an alternative limitation over on her dying without issue living at her death.

2. "Issue" in a will means primâ facie "heirs of the body."

3. This construction will yield to an intent, on the face of the will, that the words were to have a more restricted meaning and to be applied only to children or descendants of a particular class or at a particular time.

4. "Heirs of the body," are proper technical words of limitation, "issue" is not when used in a deed.

5. "Issue" in a will is to be construed as a word of purchase or limitation as will best effectuate the intention of the testator as gathered from the entire instrument.

6. The nature of the devise over is to be looked at to ascertain whether a definite or indefinite failure of issue is intended.

7. An estate tail may be subject to an executory devise over on some condition or event to take effect in abridgment or derogation of it.

8. Such executory devise can be destroyed by a common recovery which enlarges the estate into a fee and excludes all subsequent limitations, whether in remainder or as springing use or executory devise.

9. A devise over after an estate tail on a definite failure of issue, is not an executory devise but a remainder.

10. Such remainder is vested.

11. Where a limitation is to a parent for life and to his children in remainder, the parent is not tenant in tail, whether there are children or not.

12. Price *v.* Taylor, 4 Casey 95, criticised. Criley *v.* Chamberlain, 6 Id. 161, remarked on. Eichelberger *v.* Barnitz, 4 Watts 450, a leading case.

January 19th 1870. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius. READ, J., absent.

Error to the Court of Common Pleas of *Chester county:* Of January Term 1870, No 232.

This was an amicable action of assumpsit commenced November 19th 1869, by James N. Taylor against Alfred B. Taylor, in which the following case was stated for the opinion of the court.

Obadiah Bonsall died, seised in fee of a message, &c., containing eighty-one acres.

By his will, dated April 6th 1837, and proved July 21st, of the same year, amongst other things, he devised as follows: "I give and bequeath unto my beloved wife Sarah Bonsall, and my daughter Susanna Bonsall, or in the case of the death of one of them, to the survivor of them, all my real estate during their or her natural lives, and in case my daughter Susanna Bonsall shall depart this

13 P. F. SMITH—31

[Taylor *v.* Taylor.]

life leaving lawful issue, it is then my will that my real estate descend to such lawful issue, their heirs and assigns for ever; and further, it is my will that in case my daughter shall depart this life before her mother, leaving lawful issue, then such issue shall enjoy and inherit their mother's right from the time of her death. But in case my daughter shall depart this life not leaving lawful issue as aforesaid, it is then my will that my executors or the survivor of them shall sell at public sale (but not till after the death of my wife Sarah Bonsall) all my real estate, and make deed or deeds of conveyance to the purchaser or purchasers, their heirs and assigns for ever, in fee simple, the same as I could do if living, and personally present; and the neat proceeds of such sale it is my will that it be divided in the following manner, viz.: One sixth part to the children of my wife's sister Hannah Baker, or their lawful issue; one sixth part to the children of my wife's deceased sister Mary Skelton, or their lawful issue, and one sixth part to the children of my wife's deceased sister Susanna Walter, or their lawful issue.

"And the other half of my estate as aforesaid, I will to be divided between the children (or their lawful issue) of my sister Rebecca Peterson and Enoch Hannum, the son of my deceased sister Sarah (or his lawful issue), and Jesse Bonsall, the son of my deceased sister Tacy Bonsall, (or his lawful issue), share and share alike."

Sarah Bonsall, the widow of the testator, is deceased.

After her death, the said Susanna Bonsall, who never married, by deed dated May 29th 1858, conveyed the devised premises to Francis C. Hooton, in fee, and therein declared it to be her intention by that conveyance to debar the estate tail of which she was seised in the said premises.

This deed was duly acknowledged, and on the 14th of June 1858 was on motion in open court, entered on the records of the court, &c.

On the 29th of May 1858, Francis C. Hooton conveyed the premises to Susanna Bonsall in fee. On the 16th of June 1865, Susanna Bonsall conveyed the premises to James N. Taylor, the plaintiff, in fee.

On the 27th of October 1869, James N. Taylor agreed in writing to convey the premises in fee to Alfred B. Taylor, the defendant, on the 15th of November then next, for the sum of $11,000.

On the said 15th of November, James N. Taylor was ready to make a deed for the said premises to Alfred B. Taylor, but the latter declined to receive the same and to pay the purchase-money, alleging that the said James was not seised of a fee simple title in said premises, and could not convey such title to him. The actual tender of the deed was dispensed with by the defendant. The plaintiff claims to recover of the defendant the said sum of $11,000.

[Taylor *v.* Taylor.]

The question was whether under the circumstances the plaintiff was entitled to recover.

The court (Butler, P. J.) held that "Susanna having survived her mother (Sarah Bonsall), had therefore, in terms, an estate for life, with remainder to the heirs of her body. This vested in her an estate tail," which was barred by her deed to F. C. Hooton, and that his reconveyance vested in her a fee simple. Judgment was entered for the plaintiff for $11,000.

This was assigned for error, upon the removal of the case by defendant to the Supreme Court.

*W. B. Waddell,* for plaintiff in error.

*R. T. Cornwell* and *W. Darlington,* for defendant in error.—Susanna Bonsall took an estate tail under the rule in Shelly's Case, 1 Rep. 104, Co. Litt. 376; Findlay *v.* Riddle, 3 Binn. 159; Carter *v.* McMichael, 10 S. & R. 429; Paxson *v.* Lefferts, 3 Rawle 59; Hileman *v.* Bouslaugh, 1 Harris 344; George *v.* Morgan, 4 Id. 95.

Whenever the term "issue" is used in reference to persons not in being, it is synonymous with "heirs of the body": Wild's Case, 6 Co. 17; Clark *v.* Baker, 3 S. & R. 477; George *v.* Morgan, *supra.* The intention is clear, that the estate should not go over, while there was any issue of Susanna. This constitutes the main leading intent, to preserve the estate in the first taker and her immediate descendants. This can only be done by the application of the rule in Shelly's Case: Doe *v.* Applin, 4 T. R. 82; Hayes on Estates Tail, 7 Law Lib. 106; James' Claim, 1 Dall. 47; Evans *v.* Davis, 1 Yeates 332; Price *v.* Taylor, 4 Casey 95; Wynn *v.* Storey, 2 Wright 166; Haldeman *v.* Haldeman, 4 Id. 29; Criswell's Appeal, 5 Id. 288; Angle *v.* Brosius, 7 Id. 187; Covert *v.* Robinson, 10 Id. 274.

The opinion of the court was delivered, February 7th 1870, by
SHARSWOOD, J.—The word "issue" in a will means primâ facie the same thing as "heirs of the body," and in general is to be construed as a word of limitation, but this construction will give way, if there be on the face of the instrument sufficient to show that the words were intended to have a less extended meaning, and to be applied only to children, or to descendants of a particular class or at a particular time. There is less reluctance, indeed, to narrow the primâ facie meaning of the word "issue" than of the words "heirs of the body;" because these latter words are proper technical words of limitation, while "issue" is not, when used in a deed; and accordingly, in a will it is to be construed as a word of purchase or of limitation, as will best effectuate the intention of the testator gathered from the entire instrument. This was well expressed long ago by Chief Justice Willes: "Why does the

word 'issue' in a will signify the same as 'heirs of the body?' Only because it may be supposed that the testator, who was ignorant of the law, intended it should have that construction.    It does not, therefore, *ex vi termini* create an estate tail in a will as 'heirs of the body' do in a deed, but only when it appears to be the intent of the testator that the word should have that construction, or, at least, that it does not appear that the intent of the testator was otherwise:" Ginger *v.* White, Willes 348; Quiddington *v.* Kerne, 1 Lord Raym. 303; Doe on d. Cooper *v.* Collis, 4 Term Rep. 294; Slater *v.* Dangerfield, 15 M. & W. 263; Lessee of Findlay *v.* Riddle, 3 Binn. 139; Clark *v.* Baker, 3 S. & R. 470; Paxson *v.* Lefferts, 3 Rawle 59; Hoge *v.* Hoge, 1 S. & R. 144; Abbott *v.* Jenkins, 10 S. & R. 296.    It is a position not open to dispute, then, that if it appears, either by expression or by clear implication, that by the word "issue" the testator meant "children" or issue living at a particular period, as at the death of the first taker, and not the whole line of succession, which would be included under the term "heirs of the body," it must necessarily be construed to be a word of purchase; and the rule in Shelly's case can have no application.    This does appear in the will now before us, both expressly and by clear implication.

The testator gives to his wife and daughter, or in case of the death of one of them, to the survivor, all his real estate during their natural lives, and in case his daughter "shall depart this life leaving lawful issue," then his real estate to descend to such lawful issue, their heirs and assigns for ever.    He immediately adds these words: "And further, it is my will, that in case my daughter shall depart this life before her mother, leaving lawful issue, then such issue shall enjoy and inherit their mother's right from the time of her death."    No declaration could well be more express to show that by issue he meant children; for they were to inherit and enjoy "their mother's right" from the time of her death.

The devise over, which is relied on as enlarging the estate of the joint devisee to an estate in tail, follows this clause: "But in case my daughter shall depart this life not leaving lawful issue as aforesaid, it is then my will that my executors or the survivors of them shall sell, &c."    "Lawful issue as aforesaid," can only mean such issue as by the clause immediately preceding were to enjoy and inherit "their mother's right"—of course, children.

This clear expression of intention is abundantly confirmed when we examine the terms of the whole disposition.    The remainder to the issue is with superadded words of limitation in fee, to their heirs and assigns for ever.    This would certainly be insufficient if followed by a devise over after an indefinite failure of issue.    But it is a very significant circumstance as bearing upon the question of intention, if we shall find that the testator contemplated that

[Taylor *v.* Taylor.]

the devise over should take effect only on a failure of issue at a particular period—the death of the first devisee. Here was an estate in fee, with an alternative limitation over also in fee. This seems necessarily to be implied from the absolute direction to his executors or the survivor of them to sell and convert the estate into money in that event. It was to be done during the lifetime of his executors or the survivor, and as he expressly provides, not until after the death of his wife. They were to distribute the proceeds between the children of his own and his wife's deceased sisters or their lawful issue. He certainly could not have had in his mind an indefinite failure of the issue of his daughter, which might be postponed to a very remote period. The nature of the devise over has always been looked at to ascertain whether a definite or indefinite failure of issue was intended: as where the ulterior devises confer estates for life only, or when they are only to take effect in case the devisee then be living: Pells *v.* Brown, Cro. Jac. 590; Roe and Sheerer *v.* Jeffery, Term Rep. 589. In the leading case of Eichelberger *v.* Barnitz, 9 Watts 450, Mr. Justice Sergeant states the same thing as an exception to the general rule that a devise over of land on death without lawful issue, or leaving no lawful issue, means an indefinite failure: " If the devise over be of a life estate, which implies necessarily that such devisee over may outlive the first estate." The reason is very clearly stated by Mr. Smith: " Because it is not likely in such case, that the testator was contemplating an indefinite failure of issue, as that might, and most probably would not happen until many years after the death of the object of the ulterior limitation:" Smith on Executory Interests 559. " The same construction," he adds, " is adopted, when, on failure of issue, the property is devised in trust for the payment of debts, because it could not be supposed that the testator would provide for the payment of debts, on an indefinite failure of issue, which might not happen for two or three hundred years: Id. 560, for which he cites French *v.* Caddell, 6 Bro. P. C. 58; and Wellington *v.* Wellington, 4 Burr 2165; Fearne 450, n. 6.

An estate tail may, no doubt, be subject to an executory devise over on some condition or event, to take effect in abridgment or derogation of it: 1 Preston on Abstracts 401: though such an executory devise can be destroyed by a common recovery suffered by the tenant in tail, which enlarges his estate into a fee, and excludes all subsequent limitations, whether in remainder or by the way of springing use or executory devise: 2 Preston on Estates 460; 1 Preston on Abstracts 401; 3 Id. 130; 4 Kent's Com. 13. This destructibility deprives any limitation after an estate tail of all objection on the score of tending to create a perpetuity, however remote may be the event on which it is limited to vest: Lewis on Perpetuities 663. A devise over after an estate

[Taylor *v.* Taylor.]

tail on a definite failure of issue is not an executory devise, but a remainder; for it takes effect, not in derogation or abridgment of the preceding estate, but on its regular determination, though only in the event of the determination of the estate upon the death of the tenant. In this respect it resembles somewhat the remainder to trustees to support contingent remainders, which is limited only on the determination of the preceding life estate by forfeiture, or otherwise than by the death of the tenant. This remainder has been authoritatively settled to be vested: Smith d. Dormer *v.* Parkhurst, 18 Viner's Abr. 413; 4 Bro. P. C. 353; though the principle of that determination has been very seriously questioned: Smith on Executory Interests 116. There is, however, not much importance in the distinction as to the limitation over after a definite failure of the issue of tenant in tail, since, call it what you will, executory devise, or vested or contingent remainder, it can be barred by a common recovery, or by a deed duly executed to dock the entail, under the Act of Assembly of January 16th 1790, 3 Smith 388.

The fact, then, that the devise over is after a definite failure of issue, may not be sufficient to narrow the construction, where the words of limitation are "heirs of the body," or where the word "issue" is clearly used as a word of limitation, as in University of Oxford *v.* Clifton, Ambler 385; Doe d. Cannon *v.* Rucastle, 8 Common Bench 876. But when this is not the case, that it shall enlarge an express estate for life into an estate tail, seems opposed alike to reason and the decided cases.

I am aware of what is said in Price *v.* Taylor, 4 Casey 95, but I think it must be regarded as an *obiter dictum* merely. The case did not call for it. It was a limitation worded in a very peculiar manner: for life, provided the devisee had no issue, but if she did leave issue at her death, then in fee simple to her heirs for ever, and in case she had no issue at her death it was to go over. An estate tail might well have been implied from the first clause standing by itself; for if she was only to have a life estate if she had no issue, and that could not be ascertained till her death, what other estate could she have in the meantime, but an estate tail or in fee? That case, as an authority, must rest on its own circumstances—on the words of that particular will. Criley *v.* Chamberlain, 6 Casey 161, is relied on to sustain the same point, but there the first limitation was in fee, and the case has no application. On the ther hand I will cite a few of the decisions, confining myself to those which seem to be in point. Plunket *v.* Holmes, 1 Sid. 47, 1 Lev. 11, there was a devise to A. for life, and if he die without issue living at his death, remainder in fee. It was held to be an estate for life with contingent remainder over. Doe and Barnard *v.* Reason, cited 3 Wils. 242: Devise to A. for life, on her decease to such issue of her body, who shall be then living,

[Taylor v. Taylor.]

and in case my said niece shall die without issue of her body then living, then over: held to be an estate for life in A. Bennett v. Lowe, 7 Bingham 535, devise to D., L., V. and S. (females), and in case any of them die leaving a daughter or daughters, the share to go to each daughter in seniority; but if any of them, D., L., V. and S., should die without issue, in the lifetime of M., C., A. and W., the shares of her or them so dying to go to F. and others in succession; all the rest and residue of the devisor's estate to go to D.: Held, that D., L., V. and S., and their daughters, took estates for life, and D. a remainder in fee in the whole. Mr. Smith has well expressed the result of the cases in England: "When the limitation over is to take effect, not on an indefinite failure of issue of the prior taker, but on a failure of children only, or on a failure of issue within a given time; then the limitation over will not raise an estate tail by implication in the prior taker, but he will have a life estate with a contingent remainder over, or a life estate with a limitation over of a springing interest, or a fee with a conditional limitation over, as the case may be:" Smith on Executory Interests 301. Our own cases, with the exception of Price v. Taylor, utter the same voice. We have the opinion of Edward Tilghman, a great authority upon such subjects, of whom Judge Duncan said, that "he could untie the knots of a contingent remainder or executory devise as familiarly as he could his garter:" 9 S. & R. 369. This opinion was not *arguendo* as counsel, but furnished by request as *amicus curiæ* in Lessee of Findlay v. Riddle, 3 Binn. 139. That was the case of a devise to John for life, if he dies leaving lawful issue, to his heirs as tenants in common and their respective heirs and assigns, and if he die without leaving lawful issue, then to his brother James. The devise over being without words of limitation, as the law then stood, was for life. Mr. Tilghman said: "It is fatal to the idea of an estate tail that indefinite issue of John were not contemplated by the testator—indefinite in point of time —on the contrary, issue at John's death then alive." The decision of the court was accordingly, that John had only a life estate. In Carter v. McMichael, 10 S. & R. 429, Chief Justice Tilghman said: "There are no expressions, which limit the failure of heirs male of the body of Edwards to the time of his death. If there had been the case would have been different." In George v. Morgan, 4 Harris 95, Bell, Justice, said: "The words relied on (default of such issue) used in a will in reference to an estate in land, operate as a further limitation, unless there be something in the context to show that the testator contemplated a failure of issue at a particular period, and not an indefinite failure." And see Wynn v. Story, 2 Wright 166; Hoge v. Hoge, 1 S. & R. 144; Abbott v. Jenkins, 10 S. & R. 296; Caskey v. Brewer, 17 S. & R.

[Taylor *v.* Taylor.]

441; Langley *v.* Heald, 7 W. & S. 96; Turner *v.* Fowler, 10 Watts 325; Covert *v.* Robinson, 10 Wright 274.

It seems to have been supposed, that even if the word "issue" was intended to be "children," still, as there were no children of the daughter living at the time of the devise, it shall be construed as a word of limitation, and Wild's Case, 6 Rep. 1606, is cited and relied on. But this must have arisen from an entire misapprehension of that case. Land was devised to A. for life, remainder to B. and the heirs of his body, remainder to Rowland Wild and his wife, and after their decease to their children. Rowland Wild and his wife then having issue, a son and a daughter. It was resolved, that Rowland and his wife had only an estate for life, with remainder to their children for life, and no estate tail. In the course of the argument this diversity was resolved for good law, that "if A. devise his land to B., and to his children or issue, and he has no issue at the time of the devise, that this is an estate tail; for the intent of the devisor is manifest and certain, that his children or issue shall take, and as immediate devisees they cannot take, because they are not *in rerum natura*, and by way of remainder they shall not take, for this was not his intent, for the gift is immediate: wherefore, such words shall be taken as words of limitation." But in the case before us the devise was to the daughter for life, and to her issue or children after her death. As Mr. Powell says: "Where a limitation is to a parent for life, and to his children by way of remainder; there seems to be no ground whether there are children or not, for holding the parent to be tenant in tail:" 2 Powell on Devises, n. It was accordingly so held by this court in Cote *v.* Vonn Bonnhorst, 5 Wright 243; see Lantz *v.* Trusler, 1 Wright 482; Haldeman *v.* Haldeman, 4 Wright 29.

Our conclusion then is, that Susanna Bonsall, the daughter of the testator, took an estate for life, with remainder to her children in fee, with an alternative limitation over in the event of her dying without issue living at her death.

> Judgment reversed, and now judgment for the defendant on the case stated.