## O'Rourke, v. Sherwin, Appellant.

[Marked to be reported.]

*Will—Issue as a word of purchase—Life estate.*

The word "issue" in a will prima facie means "heirs of the body," and, in the absence of explanatory words showing that it was used in a restricted sense, is to be construed as a word of limitation. But if there be on the face of the will sufficient to show that the word was intended to have a less extended meaning, and to be applied only to children or to descendants of a particular class, or at a particular time, it is to be construed as a word of purchase, and not of limitation, in order to effectuate the intention of the testator.

Testator gave to his three children, naming them, all his real estate "to hold the same as tenants in common for and during their natural lives and the life of the survivor of them, with remainder in fee to the issue of them, said issue to take per stirpes and not per capita, so that in the case of the death of either of said three leaving issue, the said issue would and shall take what their parent would have been entitled to, subject to the life estate of the survivor or survivors of said original their devisees." Testator also provided for the support of his daughter, one of the three devisees, out of the land, and authorized the sale, if necessary, of one acre per year for that purpose. *Held*, that the word "issue" meant "children" and, that the devisees took life estates only.

*Power of sale—Executors.*

Testator authorized his three children, to whom he had devised his real estate, " in case they all so desire, to sell and convey and give sufficient deeds for the whole or part of said real estate above described, from time to time." In the following clause he appointed his three children executors of his will. By the wills of two of the children, the surviving brother was given their interests. *Held* that the surviving brother could as surviving executor make a good title to the land.

Not decided whether in such a case the surviving brother could make a good title by virtue of the conveyances made to him under the power of sale given by the will to the devisees.

Argued April 25, 1893. Appeal, No. 134, Jan. T., 1893, by defendant, James M. Sherwin, from order of C. P. Erie Co., Sept. T., 1892, No. 140, making absolute rule for judgment in favor of plaintiff, John A. O'Rourke. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Rule for judgment for want of sufficient affidavit of defence in assumpsit for purchase money of land.

Defendant filed an affidavit of defence averring that plaintiff had not tendered a good and sufficient deed for the land. From the record, it appeared that plaintiff claimed title from his father, Patrick O'Rourke. The material portions of the will of Patrick O'Rourke are as follows :

" Item Sixth. I give, devise and bequeath to my daughter Kate O'Rourke and my sons John A. O'Rourke and Wm. G. O'Rourke, all the real estate which I own, wheresoever situated, the same being the farm on which I reside in Millcreek township, Erie Co., state of Pennsylvania, being the same land conveyed to me by deed from Thomas H. Sill and wife, they, said Kate, John and William, to hold the same as tenants in common for and during their natural lives, and the life of the survivor of them, with remainder in fee to the issue of them, said Kate, John and William, said issue to take per stirpes and not per capita, so that in case of the death of either of said three leaving issue, the said issue would and shall take what their parent would have been entitled to, subject to the life estate of the survivor or suvivors of said original their devisees, Kate, John A. or William G.

" Item Seventh. In case of the marriage of any said three, Kate, John or William, they may have a proportionate part of

said land set off to them for separate occupancy, this not to affect the title to the land, but my daughter Kate is not to be disturbed in the occupancy of the house in which I now reside and the proportionate part of the land immediately adjacent thereto.

"If she shall need more than the use of the land hereinbefore devised her, my executors shall make her a reasonable periodical allowance, to be raised from the use of the farm, or from the sale of so much as may be necessary of said land, for such purpose; and if said executors refuse or neglect to make her a proper allowance if she needs or demands the same, I empower the orphans' court of Erie county to make and fix a proper amount and define its time of payment, and I hereby empower and authorize my executors to sell at public sale such part of my land, not exceeding one acre in any one year for this purpose and make deeds therefor, such sale to be approved by the orphans' court of Erie county.

"Item Eighth. I authorize my said children, Kate, John A. and William G., in case they all so desire, to sell and convey and give sufficient deeds for the whole or a part of said real estate above described, from time to time.

"Item Ninth. I appoint Kate O'Rourke, John A. O'Rourke and William G. O'Rourke to be executors of this my last will and testament."

Other facts appear by the opinion of the Supreme Court.

The court made absolute a rule for judgment for want of a sufficient affidavit of defence.

*Error assigned* was order for judgment as above.

*S. A. Davenport*, for appellant.—We contend that by the will of Patrick O'Rourke a joint life estate was vested in Kate, John and William G., that by it each received the same estate, the full use of the farm during life, that the three took the whole, and, as any of them died, the interest or estate before vested in the dying one, augmented the survivor's interest, until all of the life estate became vested in the one (John), who survived: 1 Bl. Com., vol. 1, b. 2, p. 163; 4 Kent. Com., p. 237.

This estate differs from an estate tail. It is not to Kate, John and William and the heirs of their bodies, but to them

and the suvivors for life, with remainder to their issue who are to inherit by classes " per stirpes as they might exist at the time of the death of the last of the devisees : " Abbott v. Jenkins, 10 S. & R. 298 ; Robins v. Quinliven, 79 Pa. 333 ; Cote v. Von-Bonnhorst, 41 Pa. 243 ; Curtis v. Longstreth, 44 Pa. 297 ; Walker v. Milligan, 45 Pa. 180 ; Coursey v. Davis, 46 Pa. 25 ; Fetrow's Est., 58 Pa. 427 ; Donohue v. McNichol, 61 Pa. 73 ; Taylor v. Taylor, 63 Pa. 483 ; Mitchell v. Long, 80 Pa. 516 ; List v. Rodney, 83 Pa. 488.

*T. A. Lamb*, for appellee.—When Patrick O'Rourke died, his children were all unmarried and without issue.   By the sixth section of his will he gives his estate to his children and their issue ; by the eighth section he authorizes his children to sell and convey his real estate absolutely.   Taking the two sections together the word "issue" should be construed as though written "heirs," and the gift, being to the children and their heirs, creates an estate tail in Patrick O'Rourke's children, which, by the act of 1855, becomes a fee.

Furthermore, taking the two sections together we have a gift to the children for life, with the absolute right in them to sell and convey.   This gives them an estate in fee : Church v. Disbrow, 52 Pa. 219.

The parties had the absolute right to dispose of the estate. The brothers partitioned the lands between themselves, and their sister on the same day made her will so disposing of her estate in the land as to confirm their acts.   The three children had it in their power to dispose of this land, and we submit that they exercised the power.

But there is another view that may be taken of the will in question, that sustains the ruling of the learned judge below. Patrick O'Rourke appointed his three children executors of his will; and he authorized his children to convey.   The power to convey was to his children as executors, and, such being the case, the fact that two of them have died does not prevent the execution of the power by the surviving one.   The act of March 12, 1800, § 1, 3 Sm. L. 433, expressly so provides.

OPINION BY MR. JUSTICE THOMPSON, July 19, 1893 :

The question in this case is whether the appellee has tendered

a good and sufficient deed for the land, and is in consequence thereof entitled to recover the price which the appellant agreed to pay for the same.    It appears by the affidavit of defence that the title to this land was in Patrick O'Rourke, who died seized of it, and that by his will he devised it as follows, viz.:

"I give, devise and bequeath to my daughter Kate O'Rourke and my sons, John A. O'Rourke and William G. O'Rourke, all the real estate which I own, wheresoever situated, the same being the farm on which I reside in Millcreek township, Erie Co., state of Pennsylvania, being the same land conveyed to me by deed from Thomas H. Sill and wife, they, said Kate, John and William, to hold the same as tenants in common for and during their natural lives, and the life of the survivor of them with remainder in fee to the issue of them, said Kate, John and William, said issue to take per stirpes and not per capita, so that in case of the death of either of said three leaving issue, the said issue would and shall take what their parent would have been entitled to, subject to the life estate of the survivor or survivors of said original their devisees, Kate, John A. or William G."

He authorized his "said children, Kate, John A., and William G., in case they all so desire, to sell and convey and give sufficient deeds for the whole or a part of said real estate above described, from time to time," and appointed them the executors of his will.    It is also averred that said Kate, John and William O'Rourke, on the 17th of September, 1881, having as sole devisees of their father been in possession thereof, each being then unmarried, and the land unincumbered, they did there make a family arrangement and partition thereof in the negotiation and settlement of which all were parties; whereby the east half of said farm was thereafter to be the sole property of John A. O'Rourke in fee, and the west half thereof to be solely William O'Rourke's in fee, and the same was set forth in a writing of that date assented to by all of said devisees (Kate, John and William), executed by John, and William, and acquiesced in by Kate; who was anxious for and fully agreed to the same.

That "she (Kate) being in expectation of death, embodied the arrangement in her last will of same date, devising the east half of the farm to John A. O'Rourke and west half thereof to

William G. O'Rourke, which will since her death has been duly probated. Possession was afterward taken of the west half of said farm by William G. O'Rourke, and maintained by him up to his death, September 4th, 1886, and sole possession was also taken by John A. O'Rourke, and since maintained by John A., of the east half of said farm, and by him held to this time."

Then occurs in it the following: "It being alleged in support of said deed that under said power of sale contained in Patrick O'Rourke's will, in the 8th item before recited," "that in case Kate, John A., and William all so desire to sell and convey and give sufficient deed for the whole or part of said real estate (the farm) from time to time, that they were authorized to convey by will as well as deed, of the whole or part, either by simultaneous, concurrent or successive action; that under this power they being all agreed as set forth in the contract of sale of September 17, 1880, made by John A., and William G. O'Rourke, and by the will of Kate O'Rourke, duly probated, that Kate O'Rourke, in her lifetime, agreed to said writing made in her presence, and on same day conveyed by her will one third of the west half of farm to William G. O'Rourke. At the same time it is alleged that John conveyed one third of the west half of said farm to William by writing, by him signed, that William conveyed thereof two thirds of the west half and his original third thereof to John A. O'Rourke by his will of August 9, 1886 (since probated). That this John A. O'Rourke became seized of west half of farm and has agreed to convey all thereof to this deponent."

"It is also alleged that Kate conveyed one third of eastern half of said farm by her will of September 17, 1880, to John A. O'Rourke. That William conveyed one third of the east half of said farm by writing to John A., September 18, 1880, and again by his will of August, 1886 (since probated), conveyed all his property to John A. O'Rourke. Thus, it is alleged, John A. O'Rourke became seized of Kate O'Rourke's third and William's third and these two thirds with his own third made him the sole owner of the three thirds or the entire east half of the farm, which he has agreed to convey to this deponent by written contract of January 1, 1891, being the whole conveyed to John in parts from time to time, by which conveyance it is

alleged John O'Rourke owns all of the farm and has a right to sell the same." Both the daughter and son died without children, while John, the survivor, has two children.

The contention on the part of the appellants is that the appellee has only a life estate in the farm, and is not therefore entitled to recover because he has not tendered a good, sufficient and marketable title. If this title be doubtful or if it be not marketable, the appellee is not entitled to recover, and whether he has such a title depends upon the estate devised and the powers conferred by the will of appellee's father.

In the use of the word "issue" in this will it seems clear that the testator intended children, as a particular class who are to take at a particular time. This intention is manifest from the phrase used "said issue to take per stirpes and not per capita, so that in case of death of either of the three leaving issue, the said issue would so take what their parent would have been entitled to, subject to the life estate of the survivor or survivors of said original devisees," and also from the provision made for the use of so much of the land as may be necessary for the daughter and authorizing a sale of one acre per year for that purpose. The word "issue" was without doubt intended to mean children, to whom the gift is by way of remainder, to take the fee not immediately, but after the death of the last survivor; they take as purchasers and the original devisees took only a life estate.

In Robins v. Quinliven, 79 Pa. 335, it is said: "But if by issue he meant children, and intended that they should take by purchase, and not by descent as heirs of their mother, then she took only a life estate. It is well settled that the word issue in a will prima facie means 'heirs of the body,' and, in the absence of explanatory words showing that it was used in a restricted sense, is to be construed as a word of limitation. But if there be on the face of the will sufficient to show that the word was intended to have a less extended meaning, and to be applied only to children or to descendants of a particular class or at a particular time, it is to be construed as a word of purchase, and not of limitation, in order to effectuate the intention of the testator: Slater v. Dangerfield, 15 M. & W. 263; Guthrie's Appeal, 1 Wright, 9; Kay v. Scates, Id. 31; Taylor v. Taylor, 13 P. F. Smith, 481; Kleppner v. Laverty, 20 Id. 70."

. "Apart from the prima facie meaning of the word there is nothing on the face of the will before us to show that by issue the testator meant 'heirs of the body,' and intended that they should take by descent. The gift to the issue is not immediate, but after the death of the devisee for life ; and there is no devise over in default of issue from which an estate tail can be implied. Besides, the gift of the remainder is not to the issue alone, but to the issue and their heirs forever, in the proportions to which they would be entitled, under the intestate laws of Pennsylvania, respectively, that is to say, in equal shares as tenants in common. The limitation to the heirs general of the issue, with the superadded words of distributive modification, clearly shows that by 'issue' the testator meant children, and intended that they should take the remainder as purchasers and not as heirs by descent."

In Cote v. Von Bonnhorst, 41 Pa. 251, it is said : " We spend no time in showing that under a devise to one for life, with a remainder to his or her children, the first taker has no freehold of inheritance. That such is the general rule is beyond doubt, and it is not denied by the complainants."

In Walker v. Milligan, 45 Pa. 180, it is said : " The devise of the remainder was to his lawful issue, child or children then living, or to the lawful issue of such child or children, as may be then (at the first taker's decease) dead, share and share alike. The gift was with words of distributive modification, and it was not to all the issue of the devisee for life. The language is descriptive of persons rather than of the character in which the remaindermen are to take ; and the testatrix defined what she meant by the equivocal term 'lawful issue' by using as synonymous with it the words 'child or children.' By pointing to those who might be living at the decease of the first taker, and by directing distribution, she manifested an intent to use the word issue as meaning child or children, rather than to use the latter words as words of limitation."

In Curtis v. Longstreth, 44 Pa. 302, it is said : " It is plain that the testator intended that the remaindermen should take as purchasers, and not as heirs, unless a contrary intent is deducible from the last clause of the words of gift. He described them by an apt word of purchase, i. e. children, and therefore the first taker had only an estate for life."

As the word " issue " was clearly intended by the testator in his will to mean children, they take as purchasers, and the daughter and sons as a consequence took only a life estate in the farm : Bool v. Mix, 17 Wendell, 119.

While they thus took a life estate there was given them the power, in case they should desire to do so, to sell the farm. It is alleged in the affidavit that in the exercise of this power of sale conveyances were made with the assent of the sister and of the two brothers, and that subsequently, by the wills of the sister and that of the brother, the title thus passed to the appellee. The conveyances thus admitted by the appellant to have been made under the power, it is contended, were sufficient to pass the title to the appellee. It may be that such is the case, because the will contemplates the execution of the power of sale, and these transfers seem to meet its requisition : Leightner v. Leightner, 87 Pa. 148. Whether this be so or not it is unnecessary to determine in the view taken of this case. In this will it is provided that in case the daughter and sons desire to sell and convey they are authorized to do so. As this power was given to them and as they were made executors, thus combining the authority and the power together, it was intended that the children should possess it, and in the event of the death of any of them, it passed to the survivor or survivors. As they were the executors it is clear that the power was to be executed by them as such. It would therefore follow that as John alone survives, he has, as such survivor, the power under the will to make sale of the farm and to make a good title to the same.

The judgment is therefore affirmed.