# McCann *v.* McCann.

*Will—Devise—Rule in Shelley's Case.*

If there be on the face of a will sufficient to show that a word was intended to have a less extended meaning than that of a word of limitation, and to be applied only to children or to descendants of a particular class at a particular time, it is to be construed ás a word of purchase, and not of limitation in order to effectuate the intention of the testator.

A devise of land to a son " to have and to hold the same for and during his natural life, and at his death . . . . to his next nearest blood relations, share and share alike," confers upon the son a life estate only, where the other provisions of the will, indicating a general scheme of distribution, show that the testator did not intend to use the words " next nearest blood relations " as meaning heirs generally.

To bring a devise within the rule in Shelley's Case, the limitation must be to the heirs in fee or in tail as a nomen collectivum for the whole line of inheritable blood.

Argued Feb. 21, 1900.    Appeal, No. 68, Jan. T., 1900, by defendant, from judgment of C. P. Lackawanna Co., March T., 1900, No. 256, for plaintiff, on case stated, in suit of Michael P. McCann v. Martha S. McCann.    Before GREEN, C. J., Mc-COLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Case stated to determine title to real estate.    Before PUR-DY, P. J., of the 22d judicial district, specially presiding.

The question in controversy arose under a devise of land by Patrick McCann to his son Michael McCann.    The material portions of the will of Patrick McCann were as follows:

" 3. I give and bequeath to my beloved wife, Margaret, the income of all my real and personal estate that I shall die possessed of, not otherwise hereinafter disposed of, in this my last will, to have and to hold the same, in lieu of her dower, for and during her natural life, and at her death, I give and bequeath the said property absolutely to my children, Michael, Frank, Genevieve and Hannah, and Anna Reap, deceased, share and share alike, the children of my said daughter, Anna Reap, named respectively, Michael, Joseph, Frank, Patrick and Aloysius, shall receive their mother's interest in equal portions, to have and to hold the same to them and their heirs and assigns forever,

"4. I give and bequeath to my beloved wife, Margaret, the use of my homestead on Swetland street, 14th ward, said city of Scranton, and all the household goods and furniture contained therein for and during her natural life, and at her demise, I give and bequeath the said property to my daughter, Genevieve, on her reaching the age of twenty-one years, absolutely to herself and her heirs and assigns forever.

"5. I give and bequeath to my daughter, Genevieve, two lots of land on Swetland street, said city of Scranton, 14th ward, together with all improvements, also a lot of land on Pleasant street, said city, 14th ward, together with all improvements thereon, also one lot number (30) thirty in the (16th) sixteenth ward, said city, on Washington avenue, together with all improvements thereon, to have and to hold the same for and during her natural life, possession of the same not to be given her until she has reached the age of twenty-one years, and at her death, I give and bequeath the said property to her next nearest blood relations, share and share alike.

"6. I give and bequeath to my daughter, Hannah Belle, on her reaching the age of twenty-one years, a lot of land on Seventh street, fourteenth ward, said city of Scranton, together with all improvements thereon, also lot of land number (29) twenty-nine on Washington avenue, sixteenth ward, said city of Scranton, together with all improvements thereon, to have and to hold the same for and during her natural life, and at her death, I give and bequeath the said property to her next nearest blood relations, share and share alike.

"7. I give and bequeath to my son Michael, on his reaching the age of twenty-one years, a lot of land in the eighth ward, said city of Scranton, on Lackawanna avenue, being number eighteen (18), together with all improvements thereon, also a lot of land on Jefferson avenue, ninth ward, said city, being number eighteen, together with all improvements thereon, to have and to hold the same for and during his natural life, and at his death, I give and bequeath said property to his next nearest blood relations, share and share alike.

"8. I give and bequeath to my son Frank, on his reaching the age of twenty-one years, a lot of land, being number twenty, on Lackawanna avenue, in the eighth ward, said city of Scranton, together with all improvements thereon, also a lot of land

on Jefferson avenue, said city, being number nineteen (19), block 73, in the ninth ward, with all improvements thereon, to have and to hold the same for and during his natural life, and at his death I give and bequeath the same to his next nearest blood relations, share and share alike.

"9. I give and bequeath to my grandson, Michael Reap, on his reaching the age of twenty-one years, a certain lot of land with improvements thereon, situate on Marion avenue, thirteenth ward, city of Scranton, being number two, to an alley according to Mylert's addition to said city, block 20, and map of P. M. Walsh, June 12, 1886, to have and to hold the same for and during his natural life, and at his death, I give and bequeath said lot of land to his next nearest blood relations equally.

"10. I give and bequeath to my grandson, Aloysius Reap, on his reaching the age of twenty-one years, a frame house and lot in block on Marion avenue, in the thirteenth ward, said city, number three and four according to Mylert's addition, and map of P. M. Walsh, last referred to, said lot extending back to an alley, to have and to hold the same for and during his natural life, and at his death, I give and bequeath said lot with improvements to his, my said grandson's next nearest blood relations, share and share alike.

"11. I give and bequeath to my grandson, Joseph Reap, on his reaching the age of twenty-one years, a house and lot on McCann street, in the thirteenth ward, said city, number 1462 and 1460, one thousand four hundred and sixty-two and one thousand four hundred and sixty, as per last mentioned diagram and map of P. M. Walsh, to have and to hold said lot and improvements thereon for and during his natural life, and at his death I give and bequeath said property to the next nearest blood relations of my said grandson, Joseph Reap, share and share alike.

"12. I give and bequeath to my grandson, Frank Reap, on his reaching the age of twenty-one years, a house and lot, number 1458 and 1456, one thousand four hundred and fifty-eight and one thousand four hundred and fifty-six, in the thirteenth ward, on McCann street, said city of Scranton, as per said map of P. M. Walsh, to have and to hold the same for and during his natural life, and at his death I give and bequeath said lot

and improvements thereon, to the next nearest blood relations of my said grandson, Frank Reap, share and share alike.

"13. I give and bequeath to my grandson, Patrick Leo Reap, on his reaching the age of twenty-one years, a lot of land with improvements thereon, situate on McCann street, in the thirteenth ward, said city of Scranton, said lot is numbered on map and diagram of P. M. Walsh, C. E. above referred to, 1454 and 1452, one thousand four hundred and fifty-four and one thousand four hundred and fifty-two, to have and to hold said lot of land for and during his natural life, and at his death I give and bequeath said lot of land to the next nearest blood relations of my said grandson, Patrick, share and share alike.

"14. I give and bequeath to my grandsons, Joseph, Frank and Patrick Leo Reap, a lot of land situate in the thirteenth ward, said city of Scranton, on Marion avenue, being number one on Mylert's addition, and 606 and 604, six hundred and six and six hundred and four on said map of P. M. Walsh, to have and to hold the said lot of land in equal interests, for and during their natural life, and at their death, I give and bequeath the said lot of land to the next nearest blood relations of my said grandsons, Joseph, Frank and Patrick Reap, share and share alike.

"15. In case any of my said children should die without issue, before my decease, or before reaching the age at which they would inherit under this my will, then the interest of such child shall be divided equally among my surviving children, the same rule shall also apply to my said grandchildren.

"16. I authorize and direct my executors in their judgment, to sell at a private sale, all the real estate that I may die possessed of, not otherwise disposed of in this my last will, and give a deed in fee simple therefor, the same as I could have done if living. Also to sell all my personal property, not otherwise disposed of in this my will, at a private sale. Also to receive the income arising from my other real estate before the same shall pass into the possession of the devisees under this my will, and to invest the proceeds of said sale and said income, in good and approved real estate security for the benefit of my said wife, Margaret, and my said children and grandchildren, as provided for in item three of this my last will.

"17. I give to my daughters, Hannah and Genevieve, at my

decease, twenty-five shares each of the Merchants & Mechanics bank stock, of Scranton, Pennsylvania, and in case I should dispose of said stock before my death, then my said daughters are to receive the value of said stock in money.

" 18. In the event at my death, of my having no blood relatives living, I then give and bequeath all my estate, real, personal and mixed, to the trustees and their successors of the St. Patrick Orphan Asylum, of Hyde Park, city of Scranton, state of Pennsylvania, for the sole use and benefit of the said orphan asylum forever. "

The court entered judgment for plaintiff on the case stated.

*Error assigned* was the judgment of the court.

*B. F. Tinkham*, for appellant.—A bequest to relations applies to the person or persons who would by virtue of this statute take the personal estate under an intestacy; either as next of kin or by representation of the next of kin : 2 Jarman on Wills, 660 ; Storer v. Wheatley's Exrs., 1 Pa. 506.

Where a testator gives an estate for life with a remainder in fee to the children of the devisee of the life estate, the term " children " is the designation of a class and they will take an estate in fee after the termination of the life estate : Miller v. Lynn, 7 Pa. 443 ; Chew's App., 37 Pa. 23 ; Sheets's Est., 52 Pa. 257 ; Huber's App., 80 Pa. 348.

*A. A. Vosburg*, of *Vosburg & Dawson*, for appellee.—The rule in Shelley's Case applies : Wolfe v. Shelley, 1 Coke, 88 ; Guthrie's App., 37 Pa. 9 ; Doebler's App., 64 Pa. 13.

The term " relation " is regarded as nomen collectivum : 2 Jarman on Wills, 662 ; Pyot v. Pyot, 1 Ves. 337 ; McNeilledge v. Barclay, 11 S. & R. 103.

If the words, " next nearest blood relations," are equivalent to the word " heirs," then, as the plaintiff was twenty-one years old when the testator died, a fee simple absolute vested in him upon the father's death : Cheesman v. Wilt, 1 Yeates, 411 ; Hauer v. Shitz, 3 Yeates, 205 ; Holmes v. Holmes, 5 Binney, 253 ; Welsh v. Elliott, 13 S. & R. 205 ; Beltzhoover v. Costen, 7 Pa. 13.

Issue is a word of limitation : Kay v. Scates, 37 Pa. 31 ;

Angle v. Brosius, 43 Pa. 187; Gast v. Baer, 62 Pa. 35; Kleppner v. Laverty, 70 Pa. 70; Ogden's Appeal, 70 Pa. 501; Carroll v. Burns, 108 Pa. 386; James's Claim, 1 Dallas, 47; Lessee of Evans v. Davis, 1 Yeates, 332; Paxon v. Lefferts, 3 Rawle, 59; Price v. Taylor, 28 Pa. 95; Rancel v. Creswell, 30 Pa. 158; Potts's Appeal, 30 Pa. 168; Yarnall's App., 70 Pa. 335; Reimer v. Reimer, 192 Pa. 571; Stigers v. Dinsmore, 193 Pa. 482.

OPINION BY MR. CHIEF JUSTICE McCOLLUM, Jan. 7, 1901:

The question presented by the case stated is whether the plaintiff has a title in fee simple to the land to be conveyed by him in the article of agreement, or only a life estate therein under the devise by the will of his father, Patrick McCann, late of the city of Scranton, deceased. If he has a fee simple, the judgment entered by the court below must be sustained, but if he has a life estate only it must be reversed.

The item in the will under which the plaintiff claims title reads as follows: " 7. I give and bequeath to my son, Michael, on his reaching the age of twenty-one years, a lot of land in the eighth ward, said city of Scranton, on Lackawanna avenue, being number eighteen (18) together with all improvements thereon, also a lot of land on Jefferson avenue, ninth ward, said city, being number eighteen, together with all improvements thereon, to have and to hold the same for and during his natural life, and at his death, I give and bequeath said property to his next nearest blood relations, share and share alike." There are other provisions of the will indicating a general scheme of disposition of the testators, which aid interpretation of the clause under consideration. The testator first makes provision for his wife. She is to have a life interest in all his property not otherwise disposed of in his will, and at her death said property is to go absolutely to his four living children and a deceased daughter, share and share alike, the children of the deceased daughter to receive their mother's interest in equal portions, " to have and to hold the same to them their heirs and assigns forever." The fourth item of the will gives the homestead, with the household goods therein contained, to the wife for life, and at her death to the testator's daughter Genevieve " on her reaching the age of twenty-one years, absolutely to herself, and her heirs and assigns forever."

The fifth, sixth, seventh and eighth items of the will make provision for the four living children of the testator by leaving them separate tracts of land for life with devise over as in the seventh item first above quoted. Similar provisions are made for the five grandchildren. Then comes the following provision: "15. In case any of my said children should die without issue, before my decease or before reaching the age at which they would inherit under this my will, then the interest of such child shall be divided equally among my surviving children; the same rule shall also apply to my said grandchildren." The testator further gives specific legacies to his wife for life, and to certain of his children absolutely, including $5,000 to his son, Frank, for the purpose of building him a house on one of the lots devised to him, and finally in the event of his having at his death, "no blood relations" the whole is left to a charity. The testator, in considering the disposition of his property, has divided it into distinct classes or estates, and made a different disposition of each. He has first carved out estates for life, and these estates in specified properties are given to the children and grandchildren. The life estates in the remaining properties, including the homestead, are then given to the widow. These estates with the specific legacies, are no doubt considered as provisions for the lives of the respective tenants. The remainders in the residuary estate and in the homestead, are given to the children and grandchildren in fee. The remainders in the other properties to "the next nearest blood relations" of the life tenants. The different phraseology used by the testator with so much care in disposing of the different estates in remainder is persuasive evidence that he did not mean the disposing words to be equivalent. The words themselves lead irresistibly to the same conclusion. While "next nearest blood relations" may be heirs, they are not necessarily all of the heirs. It is only in the event of their being all equally remote from their ancestor that the qualifying words "next nearest" would apply. It is clear from the authorities that in such case the rule in Shelley's Case has no application.

Any form of words sufficient to show that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker will enlarge the estate for life of the first taker to an estate tail by implication: Yarnall's Appeal, 70 Pa.

342; Potts's Appeal, 30 Pa. 170. It is well settled that the word " issue " in a will prima facie means " heirs of the body "; and in the absence of explanatory words showing that it was used in a restricted sense, it is to be construed as a word of limitation. But if there be on the face of the will sufficient to show that the word was intended to have a less extended meaning, and to be applied only to children or to descendants of a particular class at a particular time, it is to be construed as a word of purchase and not of limitation in order to effectuate the intention of the testator : Robins v. Quinliven, 79 Pa. 335, and cases there cited. In George v. Morgan, 16 Pa. 95, it is said that " superadded words of limitation engrafted on words of procreation will not operate to turn these words into words of purchase unless the superadded words denote a different species of heirs from that described by the first words, thus showing an intent to break the ordinary line of descent from the first taker." Accordingly in the case of Powell v. The Board of Domestic Missions, 49 Pa. 46, it was decided that a devise to one for life and to issue " if one to him or her, his or her heirs or assigns forever, but if more, then to be equally divided amongst them, their heirs and assigns forever," was not within the rule in Shelley's Case. To the same effect is O'Rourke v. Sherwin, 156 Pa. 285. In Kuntzleman's Estate, 136 Pa. 152, the devise in remainder after a life estate to a daughter, was to " such person or persons as would be entitled to the same by the laws of the commonwealth of Pennsylvania " if the daughter " survived her mother and husband " and died intestate. At page 152 Mr. Justice CLARK says : " The expression ' such person or persons as would be entitled to the same by the laws of the commonwealth of Pennsylvania,' may perhaps be taken to signify heirs (Dodson v. Ball, 60 Pa. 492 ; Williams's Appeal, 83 Pa. 377), and it may be assumed that the persons entitled under the words of the entire clause are such persons as at the daughter's death are heirs at law, exclusive of her mother and her husband. But to bring the devise within the rule in Shelley's Case, the limitation must be to the heirs in fee or in tail as a nomen collectivum for the whole line of inheritable blood. When the testator annexes words of explanation to heirs or heirs of the body as to heirs now living, etc., using the term as mere descriptio personarum, or for the specific desig-

nation of individuals, a new inheritance is thereby grafted upon the heirs to whom the estate is given (4 Kent, Com. 221), and they will be assumed to take as purchasers." The exclusion of the mother as an heir, it was held, took the case out of the operation of the rule in Shelley's Case. Beilstein v. Beilstein, 194 Pa. 152, is not in conflict with this construction as there were no restrictive words as in this case.

We are of the opinion that Michael P. McCann has only a life estate in the lands described in the seventh paragraph of the testator's will.

Judgment reversed.