## Swift's Estate.

*Wills—Construction—Issue—Definite and indefinite failure of issue—Rule in Shelley's Case.*

1. A devise to two granddaughters with remainder, if either of them leave lawful issue, to such issue in fee, "such issue to take such interest as his, her or their mother would enjoy for life if living," with gifts over, should both granddaughters die without leaving issue to survive them, to testatrix's heirs-at-law, imports a definite failure of issue at the death of the granddaughters, even in the case of a will executed before July 9, 1897, and, hence, the rule in Shelley's Case has no application.

*Practice, O. C.—Collateral inheritance tax—Appeal from appraisement to determine title.*

2. An appeal from the appraisement of a particular piece of real estate for collateral inheritance tax is to be deprecated as a means of determining the title of devisees under the will, especially as it is by no means certain that the decree will constitute *res judicata*, so far as concerns other real estate devised.

Exceptions to decree sustaining appeal from assessment of collateral inheritance tax. O. C. Phila. Co., Jan. T., 1923, No. 555.

The hearing judge, Gummey, J., said in his adjudication as follows:

"There are two appeals before me and both raise the same question, namely, whether, in construing the will of Ellen T. Stockdale, the rule in Shelley's Case is to be applied. The Register of Wills determined the question in the affirmative and assessed the tax accordingly.

"Ellen T. Stockdale died March 29, 1896, seized, *inter alia*, of premises No. 926 South Street, Philadelphia, and of an undivided one-half interest in premises No. 512 South Tenth Street, subsequently sold and the proceeds invested in premises No. 4222 Chester Avenue. It is with respect to these properties that the question arises, and the portion of the will bearing on the subject is as follows:

" 'First. I give and devise unto my daughter Julia M. Swift the house and lot situate at 926 South Street in the City of Philadelphia, the house and lot situate in the rear of said 926 South Street on an alley and numbered 926, and one-half undivided interest in the house and lot situate at 512 South Tenth Street where I now live and one-half undivided interest in the house and lot situate at 607 Ronaldson Street, to have and to hold the same for and during her natural life. On the death of my said daughter Julia M. Swift the property herein devised to her for and during her natural life, . . . I give and devise the same unto my granddaughters, Margaret Swift and Louisa Swift, daughters of my said daughter Julia M. Swift or the survivor of them for and during her or their natural life. On the death of my said granddaughters or either of them leaving lawful issue, then I give and devise unto such issue in fee simple the said premises herein devised for life to my said daughter Julia M. Swift, then for life unto my granddaughters Margaret Swift and Louisa Swift; such issue of each of said granddaughters such interest as his, her or their mother would enjoy for life if living. Should both my said granddaughters die without leaving lawful issue to survive them, then I give and devise the said property herein devised to them for life to my heirs-at-law.'

"Both Margaret and Louisa Swift died in the lifetime of their mother, Julia M. Swift, and both of them died intestate, unmarried and without issue.

"Julia M. Swift died Oct. 17, 1921, leaving a will, duly probated, on which letters of administration *c. t. a.* have been granted to Frances G. Curran; and while the primary purpose of the appeal is to have determined the rate at which the tax due the Commonwealth should be assessed, the disposition of

the appeal will also determine the persons entitled to take in distribution, who, if the rule in Shelley's Case is applied, would be those taking through the testatrix's grandchildren, Margaret Swift and Louisa Swift; while, on the other hand, if the rule is not applied, then the parties in interest are the heirs-at-law of Ellen T. Stockdale, who, at the time of her death, left to survive her five children and the issue of a deceased child.

"I am of the opinion that this is not a case in which the rule in Shelley's Case should be applied. Without going into an elaborate discussion of the cases, it seems to me that in the will of Ellen T. Stockdale the word 'issue' is used in the sense of 'descendants' (see Wistar v. Scott, 105 Pa. 200; Parkhurst v. Harrower, 142 Pa. 432), and that the will contemplates a definite failure of issue; otherwise, the testatrix would not have made an alternate gift to her heirs in the event of the death of her granddaughters without leaving issue to survive them. The word 'then' in the clause, 'then I give and devise the said property herein devised to them for life to my heirs-at-law,' is used in the sense of 'in that event,' and as Margaret Swift and Louisa Swift died without issue, the alternative gift in favor of the testatrix's heirs-at-law became effective.

"It was properly argued on behalf of the Register of Wills that, as the testatrix died prior to the passage of the Act of July 9, 1897, P. L. 213, the application of the rule is to be determined by the decisions then in force. That act, as pointed out by Mr. Chief Justice Mitchell in Lewis v. Link Belt Co., 222 Pa. 139, changed the presumption, which formerly was in favor of an indefinite failure of issue, and substituted a statutory presumption that, in the absence of words indicating a contrary intention, a definite failure of issue is to be presumed; but even prior to the passage of the act referred to, the rule that the expression 'die without leaving issue,' and other expressions of the same import, in the absence of words making a definite intention apparent, were to be construed as meaning an indefinite failure of issue, nevertheless, 'this rule, however established, always yields when a contrary intention is expressed by the testator:' Parkhurst v. Harrower, 142 Pa. 432, decided May 18, 1891. And in the case of Grimes v. Shirk, 169 Pa. 74, cited, among others, in support of the contention that in the present instance the rule must be applied, while there was an alternate gift to the testatrix's heirs, the primary gift to take effect upon the termination of the life estate, given by the testatrix to her adopted daughter, was, upon the latter's death, to her lawful issue, 'their heirs and assigns forever.' In the case at bar, the word 'heirs' is not used in the will except in connection with the gift to the testatrix's own heirs.

"The early case of Findlay v. Riddle, 3 Binney, 139 (1810), in which there was a devise by the testator to his son John for life, with provision in remainder as follows: 'And after my said son John's decease, if he shall die leaving lawful issue, I give and devise the same plantation and tract of land to his heirs as tenants in common, and their respective heirs and assigns forever. But in case my said son John shall die without leaving lawful issue, I give and devise the same plantation and tract of land to my son James Findlay, to hold to him, his heirs and assigns forever,' it was held, in an opinion in which many of the cases are reviewed, that John took a life estate only.

"Parkhurst v. Harrower, 142 Pa. 432, is so similar to the case at bar as to be controlling; Taylor v. Taylor, 63 Pa. 481 (1870), is also an authority in point. See, also, Kemp v. Reinhard, 228 Pa. 143; Mebus's Estate, 273 Pa. 505.

"The rule in Shelley's Case is never applied until the meaning of the testator is first ascertained, and if the *words* of the will show that the testator
3 D. & C.

intended the remaindermen to take directly from himself and not by inheritance from the life-tenant, the rule has no application. See Towne's Estate, 260 Pa. 443; Stout v. Good, 245 Pa. 383.

"The alternate gift of Ellen T. Stockdale is to *her own* heirs-at-law, and not to the heirs-at-law of either her daughter or her grandchildren. The primary objects of Mrs. Stockdale's bounty were her daughter, Mrs. Swift, and the latter's descendants; but in default of descendants (issue), then Mrs. Stockdale intended that *all* of her children, or those taking through them, should benefit equally, and, hence, she made the alternate gift to her heirs.

"For the reasons above given, the auditing judge finds that the rule in Shelley's Case is not to be applied, but that the parties in interest are the heirs-at-law of Ellen T. Stockdale as they existed at the time of her death, and the Register of Wills should assess the inheritance tax accordingly."

*Percival H. Granger*, for Henry F. Swift, exceptant.

*Abraham Berkowitz*, for Commonwealth, exceptant.

*Frysinger Evans*, for G. Wilson Kech, guardian, and *Frank B. Stockley*, for heirs-at-law of Ellen T. Stockdale, contra.

GEST, J., July 7, 1923.—The judge who presided at the hearing of this appeal has fully recited the facts in his opinion, and has construed the will of Ellen T. Stockdale, by which was devised the real estate in dispute. We are of opinion that this devise is not governed by the rule in Shelley's Case, and, consequently, the exceptions should be dismissed.

The learned counsel for the exceptant presented an able and elaborate argument, citing many cases which we do not consider it necessary to discuss, even if it were possible to do so within any reasonable limits, for we think that the intention of the testatrix clearly appears from an examination of her will. It is, of course, obvious that, as this will was executed before July 1, 1897, the Act of July 9, 1897, 4 Purd. 5147, has no application, and it may be conceded that, under the well settled law prior to that act, the word "issue" in a devise like this means, *prima facie*, heirs of the body, and is to be construed as a word of limitation, but it is equally well settled that this construction will give way if there be in the instrument itself sufficient to show that the words were intended to have a less extended meaning, and to be applied only to children or to descendants of a particular class, or at a particular time, and not to the whole line of succession: Taylor v. Taylor, 63 Pa. 481; Robins v. Quinliven, 79 Pa. 333. And as it was said in Miller's Estate, 145 Pa. 561, the courts have seized with avidity on any circumstance, however trivial, denoting an intention to fix the contingency at the time of the death. In the present case, we think the controlling circumstance, by no means trivial, but, on the contrary, persuasive, is found in the words "such issue of each of said granddaughters [to take] such interest as his, her or their mother would enjoy for life if living." As Justice Sharswood said in the very similar case of Taylor v. Taylor, 63 Pa. 484: "No declaration could well be more express to show that by 'issue' [the testator] meant children." The same learned judge, in the later case of Hill v. Hill, 74 Pa. 173, referred to Taylor v. Taylor as showing that the meaning of the general word "issue" was controlled by the subsequent reference to their mother; and we may also cite the later cases of O'Rourke v. Sherwin, 156 Pa. 285, and Oliver's Estate, 199 Pa. 509 (neither being affected by the Act of 1897), in which the similar word "parent" was employed.

While this proceeding is, in form, an appeal from the assessment of inheritance tax in the estate of Julia M. Swift, it is evidently intended to determine

who are the owners of the real estate under the will of Ellen T. Stockdale and subsequent devolutions. That is, the appraiser valued premises No. 926 South Street and No. 4222 Chester Avenue in certain sums, and held that, under the rule in Shelley's Case, Julia M. Swift had a certain interest therein, and so assessed the tax. The appellants claimed that the rule in Shelley's Case did not apply, and that, therefore, the parties entitled are the heirs-at-law of Ellen T. Stockdale as they existed at the time of her death. These persons, having made an agreement to sell these properties, were unable to procure title insurance; whereupon all parties in interest, or having any claim to be interested, agreed in writing that, in order to secure a judicial interpretation of the will of Ellen T. Stockdale, it should be construed by this court in this appeal from the assessment of tax, that the conveyance should be executed by all parties in interest, and that the purchase money should be distributed by the title insurance company according to the decision of the court. Were it not for the decision in Belcher's Estate, 211 Pa. 615, we should be disposed to think that the appraisement of the tax should be deferred until the question of title had been settled in the regular and orderly manner, by bill for specific performance, or case stated in the Court of Common Pleas, or otherwise. As it is, we content ourselves with the observation that the practice here adopted is to be deprecated, especially as it is by no means certain that our decree will constitute *res judicata*, so far as concerns the other real estate devised by Ellen T. Stockdale.

The exceptions to the decree are dismissed.