## Crawford's Estate.

*Will—Life estate—Remainder—Distribution.*

Testator gave money legacies and a share in his residuary estate to his sons and daughters. These gifts were absolute, except as to his daughter E. He directed that her share should be held by his executors for the use of E. to pay over to her the interest and to invest the principal. He further directed as follows: "Should E. die without lawful issue, her share held in trust by my executors shall then be equally divided between her brothers and sisters or their lawful heirs, share and share alike." *Held*, (1) that E. took a life estate only; (2) that the remainder vested in her brothers and sisters at the death of the testator; (3) that the distribution should be per stirpes amongst the representatives of the brothers and sisters, all of whom were deceased at the death of E.

Argued April 15, 1901. Appeal, No. 36, Oct. T., 1901, by Elizabeth L. Crawford, from decree of O. C. Montgomery Co., dismissing exceptions to auditor's report in the Estate of Joseph Crawford, Deceased. Before RICE, P. J., BEAVER, OR-LADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of J. H. Maxwell, Esq., auditor.

WEAND, J., filed the following opinion :

By the will of Joseph Crawford it was provided, inter alia, as follows: "I desire and hereby authorize my executors to dispose of at public sale all my real estate, household goods and furniture of every kind together with stock and farming utensils, and to pay over to my daughters hereinafter named, the

following sums, viz: To my daughter, Martha Y. Anderson, the sum of two thousand dollars; to my daughter, Ann Maria Crawford, the sum of three thousand dollars; to my daughter, Elizabeth Long Crawford, two thousand five hundred dollars, and to Hannah Emily Crawford, the sum of two thousand five hundred dollars.   After paying the above legacies to my daughters as above named, I desire and order my Executors to dispose of the residue and remainder of my property as follows, viz: To William H. Crawford, Martha Y. Anderson, John Y. Crawford, Ann Maria Crawford, Elizabeth Long Crawford and Hannah Emily Crawford, to be divided equally among them, share and share alike.   Fourth—The two thousand five hundred dollars first bequeathed to Elizabeth Long Crawford together with her distributive share of the other property, I desire and request may be held by my executors for the use of the said Elizabeth Long Crawford.   I hereby empower them to do so.   The interest accruing on the principal of the said Elizabeth Long Crawford's share of my estate which said principal I order and desire them to invest for her use.   The said interest to be paid over to her annually to dispose of as she may think proper.   Should my said daughter Elizabeth Long die without lawful issue, her share held in trust by my executors shall then be equally divided between her brothers and sisters or their lawful heirs, share and share alike."

Wm. H. Ramsey was appointed trustee to hold the share bequeathed to Elizabeth L. Crawford, and she being now deceased, an auditor was appointed to distribute the balance remaining in the hands of the trustee.

Before the auditor, four questions arose for his decision, viz:

1. What estate did Elizabeth Long Crawford take?

2. If she took but a life estate, when did the estate in remainder vest? and in whom did it vest?

3. If it vested in her brothers and sisters at death of Joseph Crawford, is it to be distributed amongst the heirs per stirpes or per capita? and

4. Should it be distributed directly to the descendants of the brothers and sisters or to the executors and administrators?

The auditor has found that Elizabeth Long Crawford took but a life estate; that the remainder vested in her brothers and sisters at the death of the testator; that the distribution

should be per stirpes, and awarded the respective shares to the executors and administrators of the brothers and sisters, who were all deceased at the death of Elizabeth L. Crawford, and all leaving children surviving, except Anna Maria Crawford, a sister. Hannah Emily Yocum also left surviving her a husband, still living.

Exceptions were filed to the report and error is alleged to every finding.

If we seek the intention of the testator from the plain meaning of his language, there can be no difficulty in finding that he intended Elizabeth Long Crawford to have but a life estate. To every other son and daughter he bequeathed a legacy absolutely and without qualifying words. The share of Elizabeth, however, is to be held in trust by his executor, the principal to be invested for her use and the interest to be paid to her annually to dispose of as she may think proper. It is difficult to see why this distinction between his children should be made unless the testator intended Elizabeth's share to be different from the others. He uses the expression " to be held by my executors for the use," etc., showing clearly that Elizabeth was not to receive it, and then couples it with a direction to invest and pay her the interest. When he comes to dispose of the principal after Elizabeth's death he again speaks of " her share held in trust," showing that she was not to have it in her lifetime and that it was to be held in trust until that time. He created an active trust during the life of Elizabeth.

It is contended that the use of the words " should my daughter, Elizabeth Long, die without lawful issue," converts this into an absolute estate. That Elizabeth, herself, had no such thought is evident from the fact that for forty-three years she made no such claim, and her administrators should now be estopped from so doing, there being no allegation that her estate is insolvent or that there would be any other claimants to the fund other than those before us.

We think, moreover, that the legal construction to be placed upon testator's words import but a life estate. In Bentley v. Kauffman, 86 Pa. 100, 101, Chief Justice Agnew said : " Did Leon Kauffman take an estate for life, or absolutely, in the personalty bequeathed to him by his mother, Hannah Ann Kauffman? We think it was a bequest of the interest or in-

come for life only. That a bequest of income or profits will carry an absolute estate in the principal or corpus of the estate in some cases is well settled, but the ground of the conclusion in such instances is that no contrary intent of the testator appears to sever the product from its source, and the fruits, therefore, carry with them that which bears them. In the interpretation of a will, however, in order to gather the testator's intention, the words income and interest as distinguished from the corpus or principal, and the enjoyment for life only have an important bearing: Earp's Appeal, 75 Pa. 119; Ogden's Appeal, 70 Pa. 501. Hence when the intent clearly appears to carry the corpus or principal over to others, the words of the will must be permitted to have their proper force. Here, the bequest of the interest only, for life, connected with the provision immediately following, is inconsistent with an intent to confer the principal absolutely upon him. The provision is: 'If my son, Leon Kauffman, should die without issue, it is my desire that the whole amount of my investment be given to the orphans' asylum.'

The trust is an active one, intended to preserve the contingent remainders: Kay v. Scates, 37 Pa. 31; Scheets's Est., 52 Pa. 257; Eachus's Appeal, 91 Pa. 105.

Moreover, a limitation over on the death of the first taker, or a direction that the interest of money shall be paid annually to him for life, is held to be evidence that he has but a life interest: Myers's App., 19 Pa. 111; Scheetz's Est., supra; and in Reck's Appeal, 78 Pa. 432, it was held that " all mere technical rules of construction must give way to the plainly expressed intention of testator, if that intention is lawful." Judge BLAND's opinion in Gerhard's Estate, 160 Pa. 253, covers all the law bearing on the case and sustains the auditor in his conclusion on this point.

To whom, then, and at what time, did the principal vest? It is contended that the expression, " shall then be equally divided," fixes the time of vesting, and that as all the brothers and sisters were then dead, i. e., at death of Elizabeth, that the lawful heirs of said brothers and sisters are to be considered the remainder-men. We think this interpretation cannot be sustained. " Then " was not used to fix time, but a contingency. If Elizabeth should leave no issue the estate passed

to her brothers and sisters. " Then " was used in the sense of " in case " she should so die. Having provided that the principal was to be held during Elizabeth's lifetime, of course it could not be distributed until her death, and testator was under no necessity of again fixing the time. He was simply providing for a contingency upon the happening or not happening of which would determine the takers, but the remainder was to the brothers and sisters contingent upon Elizabeth's death without issue. In Buzby's Appeal, 61 Pa. 111, the court said : " Nor will the use of the word ' then ' as introductory to the bequest or devise over after the death of the tenant or legatee for life, prevent the general rule from applying, unless it is so used as clearly to indicate that the next of kin or heirs living at the death of the tenant for life are intended by the testator."

Where a testator directs that after the expiration of a particular interest his estate shall go to his " right heirs according to the intestate laws of the state of Pennsylvania," he is to be understood as meaning the person who would have taken at the time of his death, and not at the time appointed for their taking, unless the will affords clear and unequivocal evidence to the contrary. Stewart's Estate, 147 Pa. 383, Patterson v. Hawthorn, 12 S. & R. 112, Mull v. Mull, 81 Pa. 393, and Muhlenberg's App., 103 Pa. 587, are all to the effect that this was a vested estate in the brothers and sisters immediately upon the death of testator, subject to be divested by the birth of issue to Elizabeth, and this being so, the distribution must be made per stirpes. The nephews and nieces take what their ancestors would have taken. There is no use of the word "grandchildren," nor anything to rebut the idea of an equal distribution amongst all his children, and he could not have anticipated the contingency of the death of all of them before Elizabeth's decease.

That the distribution to the representatives of the various estates was proper is shown by Judge ASHMAN's ruling in Sweed's Est., 10 Pa. C. C. R. 463, where he said : " It was within the discretion of the auditing judge, after the lapse of time first mentioned, and upon satisfactory proof that the daughter had made no assignment of her interest, to have ordered payment of her share to the surviving husband and

170, (1901).] Opinion of Court below—Opinion of the Court.

child, but he certainly committed no error in adopting the course which is ordinarily pursued, and which has the merit of being the only course which is absolutely safe."

And now, June 4, 1900, the exceptions are all overruled, the report of the auditor is confirmed, and distribution decreed accordingly.

*Error assigned* was the decree of the court.

*Miller D. Evans*, with him *William B. Crawford*, for appellant.

*N. H. Larzelere*, with him *John W. Bickel*, for appellee.

PER CURIAM, May 23, 1901:

The able argument of the appellant's counsel has failed to convince us that the court below committed error in the decision of either of the three questions presented for our consideration. The correctness of the conclusions reached is so fully vindicated in the auditor's report and the opinion of the court overruling the exceptions thereto, as to render further discussion by us unnecessary.

The decree is affirmed and appeal dismissed at the cost of the appellant.