## Siegwarth's Estate (No. 1).

*Wills—Construction—Vested and contingent estates—"Die without issue"—Act of July 9, 1897, P. L. 213.*

Testatrix after giving shares of her estate to two sons, directed that such shares should be held by her executor "in trust for my said sons, the income and clear annual profit arising from the interest or share hereby given is to be paid to my said sons, but no part of the principal of said estate is to be given to my said sons for five years after my death, and then only when in the judgment of my executor, they shall have proven themselves to be entirely competent and qualified to take proper care of same, at which time the said trustee, shall pay the same over to my said sons, and in the event of the death of either of my said sons without issue, then their share or shares shall revert back to my estate, and shall go to and be divided among my remaining heirs." *Held*, (1) that the words "death without issue" meant death in the lifetime of the testatrix; (2) that the sons took a vested estate upon surviving the testatrix, and (3) that there is nothing in the Act of July 9, 1897, P. L. 213, to prevent such a construction of the will.

Argued April 9, 1907. Appeal, No. 102, April T., 1907, by Magdalena Warren, from decree of O. C. Allegheny Co., Sept. Term, 1906, No. 149, distributing fund in Estate of Margaretha Siegwarth, deceased. Before RICE, P. J., HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

MILLER, J., filed the following opinion :

The question is, what estate did Philip Siegwarth, now deceased, take under his mother's will, in which, after making several charitable bequests, she provided as follows :

" Fifth. I do hereby order and direct my executor, hereinafter named, to sell all my real estate, at public or private sale, as he may deem best, and to execute good and lawful deeds or

assurances for the same, also to convert all the rest of my estate into cash, and after the payment of above bequests, I do give, devise and bequeath the same in five equal shares to the following named parties, viz.: to the children of my deceased son, Charles F. Siegwarth, one share ; unto my daughter, Magdalena Werries (nee Siegwarth) one share ; unto my daughter Sophia Liebler (nee Siegwarth) one share ; unto my son Philip Siegwarth one share ; and unto my son William Siegwarth the remaining share.  In respect to the share, part or portion of my estate, given to my sons Philip Siegwarth and William Siegwarth, I direct that the same be held by my executor, hereinafter named, in trust for my said sons Philip Siegwarth and William Siegwarth, the income and clear annual profit arising from the interest or share hereby given is to be paid to my said sons Philip Siegwarth and William Siegwarth, but no part of the principal of said estate is to be given to my said sons Philip Siegwarth and William Siegwarth, for five years after my death, and then only when in the judgment of my executor, they shall have proven themselves to be entirely competent and qualified to take proper care of same, at which time the said trustee, shall pay the same over to my said sons Philip Siegwarth and William Siegwarth, and in the event of the death of either of my said sons Philip or William Siegwarth, without issue, then their share or shares shall revert back to my estate, and shall go to and be divided among my remaining heirs."

Testatrix died June 12, 1905, her son Philip died on October 31, 1905, intestate and without issue, but leaving to survive him his widow, Annie Siegwarth, to whom letters of administration have been granted.

The will worked a conversion from the time of testatrix's death, and the entire estate so converted was devised absolutely in equal shares to the five children.  This is an antecedent absolute gift, and by it Philip's share is a vested legacy, with the interest or income thereon to be paid to him for a period of five years or longer, under certain conditions, subject to the judgment of the executor, who was appointed trustee for that purpose, with the payment of the principal postponed for said period.  The direction as to Philip's share in the hands of the executor as trustee is a separate independent direction,

and concerns itself with the time of payment and the discretion which is conferred upon the executor.

The devise of the estate is a separate antecedent substantive gift, independent of the time of payment, and comes within the rule of McClure's Appeal, 72 Pa. 414, thus vesting the legacy absolutely in Philip.

The gift of the income during the five year period, and indefinitely if the executor saw fit, constitutes a gift of the fund itself : Bruch's Estate, 185 Pa. 194.

The direction to the executor to pay the principal only when in his judgment Philip proved himself to be entirely competent and qualified to take proper care of the same, in nowise affects testatrix's intention to give Philip the entire beneficial interest of this bequest (Millard's Appeal, 87 Pa. 457), where a similar devise was made, and where it was held, as must be held here, that " the conditions upon which the principal was to be paid having become impossible by the act of God," i. e., by the death of Philip, the legacy is a vested one.

That the reversion of Philip's share, " if he died without issue," means death in the lifetime of the testatrix, is too clear to require citations from the beadroll of authorities ; not only is this conclusion established from that well-known rule of law, but it is in accord with testatrix's intention. She directed the payment of this legacy, subject to the executor's judgment at the end of five years. If this period had arrived, and the executor had been satisfied of Philip's competency to accept the legacy and had paid it to him, is there any question that the legacy so paid was Philip's absolute property irrespective of the question of his having died without issue ? If she had intended an indefinite failure of issue, or had intended that if Philip had no issue at the expiration of five years, or at any later period when the executor was ready to pay the principal that thereupon it would revert to her estate, she would have said so ; and to have said so would have rendered meaningless her direction to the executor to pay at the end of the stipulated period.

The circumstances under which the executor paid Philip's funeral and other expenses were unusual, and the same should not be charged against him personally, but the same should be treated as an advancement on account of his share. The ap-

622, (1907).] Opinion of Court below—Opinion of the Court.

proval filed by the heirs of age of this expenditure and the implied agreement that it should be proportionately charged against their respective shares, is on the presumption that Philip's estate reverted to them; a contrary conclusion being reached this stipulation is not binding.

A decree will be entered awarding to the administratrix of Philip his share of this estate, less the personal expenses charged against him by the executor. Upon the filing by the administratrix of her account of this fund, distribution thereof will be made according to the intestate law.

*Error assigned* was the decree of the court.

*R. S. Martin* and *Jere Carney*, for appellant.

*W. A. Hudson*, for appellee.

PER CURIAM, May 13, 1907 :

We are of opinion that the questions raised by this appeal were correctly decided by the court below, and for the reasons given in the opinion filed by the learned judge. We will only add to the discussion a few words as to the Act of July 9, 1897, P. L. 213. It is contended that in wills made since the enactment of that statute the words, " die without issue," must be construed to mean a want or failure of issue in the lifetime or at the death of the legatee, " unless a contrary intention appear " by the will in which the bequest is contained. According to this construction, the gift to Philip Siegwarth would be defeated by his death without issue whenever it might occur. Or, as the appellant's counsel states the proposition, one of the conditions or contingencies annexed to the gift was that he should not die without issue. The act of 1897 is not specifically referred to in the opinion of the learned judge below, but we think he has made it quite clear that " a contrary intention " does appear in the will under construction. First, the gift to Philip is absolute in terms ; it is distinguishable, upon the principle enunciated in McClure's Appeal, 72 Pa. 414, at bottom of p. 417, from the gift construed in Crawford's Estate, 17 Pa. Superior Ct. 170. Second, the testatrix contemplated and directed payment of the principal to him at such time at or after the expiration of five years as, in the

judgment of the executor, he should prove himself entirely competent and qualified to take proper care of the same. It would be contrary to the intention of the testatrix, plainly manifested in these provisions, to say that, although the gift was absolute in the first instance and the time of payment of the principal had arrived, it would be the right or the duty of the executor to withhold payment, or to say that the gift would be defeated by the death of Philip without issue after that time and before payment was actually made. Whatever doubt there may be as to the intention of the testatrix in other particulars, it is very clear that she did not intend that. Hence, so far as we can see, the act of 1897 has no application, and the will is to be construed as if it had not been passed. Independently of that act, there may be room for debate whether the testatrix did not mean that if Philip should die without issue before the time for payment of the principal should arrive, his share should go to her other heirs. But she did not say so, and in arriving at her intention the general principles are to be kept in view, that the first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life, or, what is practically the same thing, to be subjected to an executory gift over upon the occurrence of the contingency of death, or death without issue at any future period within the rule against perpetuities, without clear evidence of such an intent: Mickley's Estate, 92 Pa. 514; also, that a bequest absolute in terms is to be regarded as vested rather than contingent, unless the language of other parts of the will indicates that the testator had a different intention. Hence, it is a general rule—which it is true must give way if "the actual, personal, individual intent" of the testator as manifested in the whole will requires otherwise—that if a bequest be made to a person absolute in the first instance, and it is provided that in the event of death, or death without issue, another legatee or legatees shall be substituted to the share or legacy thus given, it is to be construed to mean death, or death without issue, before the testator. There is nothing in the act of 1897 to prevent the recognition of these general principles in the construction of this will.

The decree is affirmed, the costs of this appeal to be paid by the appellant.